## COCHECO BANK *versus* JAMES S. BERRY.

The effect of a subsequent contract upon a pre-existing one is a question for the Court to determine from their terms.

If the provisions of the second contract were only *additional* to those of the first, and not inconsistent and irreconcilable therewith, they might be treated as one.

But where two contracts of different dates, made upon the same subject matter, cannot be reconciled without rejecting some of the material stipulations in the one or the other, or in both, effect will be given to such one of the contracts as the intention of the parties shall seem to require.

If a former contract is to be revived, simply because it may have become obsolete, it need not be re-written; but the time of performance only changed.

If the latter contract contain new stipulations which are inconsistent with those in the former, it cannot be considered a supplement.

When A entered into a written contract, in May, 1853, to build a house in accordance with certain specifications, at an agreed price, to be completed on or before September following; and he did nothing but make the doors until the fall of 1857; when another written contract was made materially different from the former in regard to the specifications, considerations, rights and duties of the parties, containing stipulations inconsistent with those of the former but complete in itself; — *Held*, that the latter contract cannot be construed as a supplement to the former, but as a new and independent contract; and a mechanic's lien secured upon the house could not refer back to the former.

ON FACTS AGREED.

WRIT OF ENTRY.

Both parties derive title from Daniel E. Somes, who received his title from Lawrence Barnes, Nov. 14, 1857.

On Nov. 24, 1857, Somes mortgaged the premises to the plaintiffs, by deed duly recorded Nov. 27, 1857.

On May 8, 1861, the plaintiffs having, in an action against Somes, commenced in 1859, recovered judgment for possession of the premises, for breach of the condition of the mortgage, received seizin and possession thereof from the officer, under the writ of *habere facias*, which was duly recorded May 21, 1857; and, on April 1, 1862, the plaintiffs commenced this action, to recover their possession, against the defendant, who, in the meantime, had entered and disseized them.

The defendant claims title by virtue of an alleged lien under a contract between one William B. Pierce and the said Somes, for building a house upon the demanded premises, secured by an attachment of the same on mesne process, made Nov. 13, 1858, and duly followed by levy, Oct. 29, 1860; and by a conveyance by a deed of warranty from said Pierce to the defendant, Jan. 1, 1862.

The main question was whether or not the Pierce lien commenced prior to Nov. 24, 1857, the date of the plaintiffs' mortgage. The defendant contended it did, and put in the following contracts, A and B, together with the deposition of the said Pierce.

"A.

"This agreement, made this twenty-fourth day of May, 1853, between William B. Pierce and Daniel E. Somes, both of Biddeford, witnesseth, that the said William B. Pierce agrees, for the consideration hereinafter expressed, to provide and put up for the said Somes, the frame of a dwelling-house, 28 feet long by 20 feet wide, two stories high, the lower story to be 8½ feet, and the second story to be 8 feet high, with square roof; to board the same with suitable boards, and shingle the roof with good white hemlock shingles, the eaves to project 10 inches; to build two chimneys, which are to be well leaded to prevent leaking through the roof; to finish and put on the outside trimmings; two outside panel doors, 13 window frames and sash for 12 lights, each 9 by 12 inches; and to lay under floors for both stories of the house; all to be done in a good, workmanlike manner, on or before the fifteenth day of June next.

"The said William B. Pierce also further agrees, for the consideration hereinafter named, to provide all the materials of suitable quality, free from rot and shakes, and build and finish on a lot to be selected by said Somes in Saco, a two-story dwellinghouse and out buildings, according to the plan this day agreed upon and signed by them; the walls to be well boarded and covered with good, fair clapboards worth $16,00 per thousand, the roof to be square and shin-

gled with good white hemlock shingles, the eaves to project 14 inches, and to be sheathed underneath; chimneys to be of suitable size, and to be well built and leaded to prevent leakage through the roof; windows to have 12 lights, each 9 by 13 glass; the finishing boards to be free from sap and generally free from knots; the doors below to have morticed latches, and the doors above to have common handle latches; all the wood work inside and the outside to be painted with two good coats of. white lead paint, or such other color of paint as said Somes shall prefer. The whole to be built and finished in a good and workmanlike manner, and to be completed on or before the first day of September next. Said house to be well plastered with one coat and smoothed.

"And the said Daniel E. Somes on his part, hereby agrees to dig and stone the cellar, and provide and set up the underpinning for the last mentioned house so as not to delay the said Pierce in the performance of the contract aforesaid, and to pay to the said Pierce the sum of eleven hundred and fifteen dollars, which is to be in full satisfaction for the performance of the aforesaid contract, in part payment of which sum the said Somes is to make and deliver to the said Pierce a good and valid conveyance of four acres of land, out of a tract of forty-four acres heretofore conveyed to said Somes and others, by William Cutts, to be laid out in one body in a convenient form in any part of said tract which said Pierce shall select, not to interfere with the road to be made across said tract, which said Pierce is to receive in payment of three hundred and twenty dollars of the sum aforesaid; the residue to be paid by said Somes in cash."

  (Signed)    "Wm. B. Pierce,
          "D. E. Somes and others."
Witness.—"James S. Anderson."
       "B.

"Memorandum of an agreement between D. E. Somes, of the one part, and William B. Pierce, of the other part, entered into at Biddeford, this 25th of January, 1858, witnesses:—

"That said William B. Pierce agrees to find all materials and to build, finish and complete, above the underpinning, a two-story wooden house to be situated near the dwelling-house of Nathaniel Currier in Saco; main house to be two stories and 20 by 28 feet on the ground, with an L part one story high, 12 feet by 22 feet; rooms in the first story are to be 9 feet high, and in the second story 8 feet high; one chimney in the main house and a chimney in the L part,— no oven in either. House in its arrangements, finish and painting to be in all particulars the same as the one on Mt. Vernon street, Biddeford, built by Charles Hardy and by him sold to Charles H. Milliken, except, that the roof is to be covered with cloth and painted instead of being *tinned*.

"Said Somes, on his part, is to furnish the foundation for said house and to pay said Pierce for said house, entirely completed, the sum of eight hundred dollars. And it is further agreed between said parties, that said Somes shall furnish the frame of said house at the rate of $9 per M feet, and the hemlock boards for the same at the rate of $8 per M feet, and all sheathing boards, flooring and finishing boards at the rate of $10 per M feet, and all glass, hard-ware, paint and oil for the same as cheap as can be bought for cash anywhere, for all of which materials said Pierce is to account and pay said Somes. And said Somes agrees to convey to said Pierce, by a good and sufficient warranty deed thereof, a house lot situated on Maple street, in said Saco, numbered ——, on plan of lots of D. E. Somes and others, for the sum of three hundred dollars, which sum said Pierce agrees to allow to said Somes for the same, in part payment of the said eight hundred dollars. Said house to be completed on or before the first day of June next.

And said Somes is to advance to said Pierce the sum of fifty dollars in cash in the month of February next, towards the said eight hundred dollars · and the balance that may be due on the completion of said house."

(Signed)          "D. E. Somes,

Witness.—"S. W. Luques."      "Wm. B. Pierce."

The first item of account in the suit, *Pierce* v. *Somes*, was as follows :—

"Aug. 26, 1858.—Daniel E. Somes to Wm. B. Pierce, Dr.

"To building house, northwest side of Maple street in Saco, and furnishing labor and materials for same, price as per first agreement, $800."

The material parts of the said deposition are as follows :—

"*Direct examination.*— 2. I completed a house for Daniel E. Somes, in 1858, on land in Saco.

"3. I built it in pursuance of a contract between him and me.

"4. The original contract was made, as near as I can recollect, some three or four years previous to building the house.

"5. The first work I did for this house was in the winter of 1856–7 ; the doors were made then. The first materials purchased were for the doors, either when they were made or shortly before.

"6. I made doors, as before stated, and then he had not fully made up his mind—some alterations and arrangements he wanted to make, and he concluded to defer the matter till the next winter—the next winter, he concluded what alterations he wanted, and I went on and built the house. This was in the winter of 1857–8. I then made blinds and sash for the house, and, in May, 1858, I raised the frame, and completed the house that season.

"*Cross-examination.*— 12. Our agreement, in the fall of 1856–7, was, that I was to build the house at my leisure. That winter I made the doors. The next spring I was busily engaged and put off the commencement of the house, from time to time, to suit my convenience. Fall of 1856–7, I commenced again, and, before snow came, we staked out the cellar and had some digging done for the foundation.

"17. The lot was not specified when the contract was made.

"18. The lot was selected in the fall of 1857, the fall before the house was built.

" 22. He agreed, in the fall of 1857, to pay me for building the house the price charged in my writ, with the alterations which were made from the original plan.

" 24. The final plan was agreed upon in the fall of 1857, and the plan was not fully completed until we finished the building of the house.

" 29. The principal alterations were agreed upon before framing. The plan was agreed upon and the time when the building should be completed, but alterations were suggested and agreed upon during the building of the house.

" 30. The house was to be completed in June, 1858—June or July—but, from another arrangement, it was not completed until August.

" 34. I built the house in accordance with contract "B," drawn in 1857, with what alterations were made afterwards.

" 37. The house I levied upon was the house I built under that specification and in fufilment of the original contract.

" 39. We altered the size of the L part and the inside of the main house—one additional chimney—plan of L altered. The alterations were made under an agreement with Somes.

" *Direct resumed*—1. The original contract was unperformed and in force, and contract " B" was drawn up for the purpose of carrying out contract " A," with the alterations and substituted specifications which had been at that time, and previously, agreed upon between me and Somes.

" It was my custom to make doors, sash, blinds, &c., in the winter, for houses I had contracted for; sometimes, for houses not contracted for."

The Court was to draw such inferences as a jury might; and judgment was to be rendered for whichever party the Court should find the title to be in.

*P. Eastman & Son*, for the plaintiffs.

*John M. Goodwin*, for the defendant, argued that—

Both parties derive title from the same person, Daniel E. Somes. The real question is, then, which has the older and better title.

Cocheco Bank *v.* Berry.

The plaintiffs' title can only date from Nov. 24, 1857, the date of their mortgage deed from Somes.

The defendant's title, if the lien of Pierce was a good and valid lien, and was made available by the levy and prior attachment, bears date some time prior to the 24th of Nov., 1857.

This must depend upon the question, whether Pierce had or not a lien under the statute, upon the demanded premises, for the amount of the debt due him from Somes, at the time of the commencement of his suit against Somes, and for which he recovered judgment at the Sept. term, 1860, of S. J. Court, and whether the proper legal steps were taken to secure the benefit of that lien.

The evidence to show whether Pierce had a lien or not, is to be found in his deposition. The evidence to show whether the proper legal steps were taken to perfect and secure the benefit of said lien, if any existed, is to be found in the copies of proceedings in the suit, *Pierce* v. *Somes*, making a part of this case.

Did Pierce do the work and furnish the materials for which he recovered judgment against said Somes, *by virtue of a contract*, with said Somes for building the house, part of the demanded premises? If he did, he had a *lien* on said house and the lot on which it stands to secure payment of the sum due him therefor.

The deposition of Pierce shows that every article of materials furnished, and all the labor performed in building said house, was under and by virtue of contract with Somes; that the contract was first made in May, 1853; that part of the contract was fulfilled prior to November, 1857, and prior to the execution of the plaintiff's mortgage, and the remainder of the work was done after said mortgage was given. But the plaintiff's counsel argues that the contract of May, 1853, became *not null and void*, but "*effete*" — was "waived," &c. The performance of the contract of May, 1853, was postponed from time to time by the agreement or consent

of parties, and the witness Pierce tells why it was so done. But it never was waived or abandoned.

Pierce did work under this contract for or upon the house on the demanded premises, in the winter of 1856 and 1857, when he made the doors. (See answer to 5th interrogatory.)

In the fall of 1857, he was at work getting out the materials; the cellar was staked out, and the foundations partly prepared; and, in the winter, the sash and blinds were made. (See answers to 6th direct interrogatory and 12th cross-interrogatory.)

This was all done previous to the writing of the contract of Jan. 25, 1858, and shows that there was no waiver or abandonment of the prior contract of 1853.

The contract of Jan. 25, 1858, was merely substituted for the other, for the purpose of adapting it to the alterations as agreed upon between Somes and Pierce. The work went on to its completion the same as if no second or substituted contract had been written out. The same house, on the same lot, and for the same owner, was finished up in the summer of 1858, that had been commenced in the summer and fall of 1857, before the second contract, (so to speak, for want of a better term,) was written out.

The payment for the work was not, under either writing, to be made until the work was completed.

The lien, therefore, was in no way affected by the alterations in the contract as agreed upon by Somes and Pierce.

It was a lien throughout, for work done and materials furnished, in building a house by *virtue* of a *contract*, having its inception and its termination at the same points of time, whether the whole work was done under one and precisely the same contract, or whether it was done under a contract changed at different times, in reference to some of the minor details relating to the plan and specifications of building.

The substantial part of the contract was the undertaking to *build a house*, and for the payment of the sum that might become due on the completion of this undertaking, the stat-

ute gave the builder a continuous, indivisible and entire *lien*, covering all that was done from the time of making the original to the final completion of the building.

That changes in the plan and specifications, or even prices, were made, as the work proceeded, could make no difference. The work was still prosecuted at each step under and *by virtue* of a *contract*, and the continuity and *oneness* of the *lien* was preserved, by the work being done upon the same house, for the same owner, by the same builder, and the time of payment also being the same, *viz.*, the time of finishing the building.

The opinion of the Court was drawn by

DICKERSON, J. — Writ of entry. Both parties claim to derive their title to the demanded premises from Daniel E. Somes. The demandant claims under a mortgage deed from said Somes to him, dated Nov. 24, 1857, and recorded Nov. 27, of the same year. . To make out his claim of title the tenant introduces a warranty deed from William B. Pierce to him, dated January 1st, and recorded Feb. 13, 1862. · The tenant, also, puts into the case the copy of a writ with the officer's return, William B. Pierce against Daniel E. Somes, dated Nov. 13, 1858, and secured by attachment of the demanded premises on the same day, a copy of the execution, issued on the judgment rendered thereon, and dated Sept. 29, 1860, and a copy of a levy of the same on the premises in controversy, Oct. 29, 1860.

The demand in the suit, Pierce against Somes, is a lien claim for building a house on the demanded premises; and the principal question is whether the proceedings in that case can avail the defendant to defeat the plaintiffs' action.

Two written contracts for building a house are introduced, the one dated May 4, 1853, and signed by William B. Pierce, on the one part, and "D. E. Somes and others," on the other part; the other is dated January 25, 1858, and signed by William B. Pierce and D. E. Somes. The defendant claims that the house was built under the first contract, the second

contract being only a supplement to the first; and the. plaintiff contends that both contracts are entire and independent, and that the second superseded the first.

The construction of contracts is a question for the Court, and the intention of the parties is to be gathered from the terms of the contract, and not from parol testimony. So, also, the effect of a subsequent contract upon a pre-existing one is to be determined by the Court.

Though some of the stipulations in these contracts are identical, yet they differ widely in respect to date, consideration, time of performance, the rights and duties of the parties in regard to materials to be furnished, and the style of finish required. No reference is made in either contract to the other. Each of itself is a complete, entire, and independent contract; and each is inconsistent, and irreconcilable with the other. Both are impossible of execution in respect to the same subject matter. Amidst this conflict of provisions, which shall take precedence? Upon this point both contracts are silent. The Court has no right to decide that a particular provision in one contract shall control, or supersede a particular provision in the other, as this would be making a new contract for the parties. If the provisions of the second contract were only *additional* to those of the first contract, and not inconsistent and irreconcilable therewith, the Court might treat them as *one* contract. But, where parties make two contracts upon the same subject matter, which cannot be reconciled without rejecting some of the material stipulations in the one or the other or both, the Court will not enter upon this work of expurgation, but will endeavor to give effect to the one contract or the other, as the intention of the parties shall seem to require.

In making the second contract—the parties had *some* purpose. Was it to revive the first contract, or to supplement it, or make a new and independent one? There was no occasion to re-write the old contract, in order to revive it, if it had become obsolete. The parties had only to carry out all its provisions, except that relating to *the time* of per-

formance—to make it effectual. That they intended to do something more than to revive the old contract is clear from the fact that they introduced new provisions into the second instrument. If their purpose had been simply to supplement the first contract, they would have introduced *additional* provisions *only*, and not inconsistent ones; for they cannot *be presumed* to have intended to nullify certain stipulations of the first contract in the second ore, and to preserve the others, in the absence of any intimation to that effect, except what arises from the fact of their repugnancy. The intention and purpose of the parties in entering into the engagement of January 25, 1858, can be carried into effect only upon the ground that they then made a new, entire and independent contract. This construction is sustained by the completeness, harmony, and independence of the provisions of that contract, and the acts of the parties.

The first contract, though required by its terms to be performed in June, 1853, was allowed to slumber till the winter of 1856 and 1857, when a few doors were made. Again, it reposed till the fall of 1857, when "the parties staked out the ground, and Somes had some digging done for the foundation." The second contract was entered into Jan. 25, 1858, and the entire work was completed in the following August. This contract seems to have imparted activity to the parties, and given practical effect to their intentions. The wants and tastes of Somes in regard to materials, arrangement, and style of finish had changed during the lapse of five years; and a contract was entered into, suited to this altered condition of things. This contract superseded the contract of May 4, 1853, if indeed that continued in force till this was made; by entering into this contract, the parties waived all their rights under the other.

Nor is this state of things changed, as is argued by the counsel for the defendant, from the testimony of Pierce, that the work was done under the old contract. The interest of this witness, as warrantor, of the defendant's title, is so strong, and his testimony is so inconsistent with itself, and

irreconcilable in this respect with the terms of the second contract, and other facts in the case, that we cannot adopt the conclusion arrived at by his counsel.

From the view we have taken of this case, it becomes unnecessary to determine at what particular time the lot was staked out by the parties or the legal effect that act, and the making of the doors in the winter of "1856 and 1857" had upon the parties under the first contract. Their rights are to be settled under the contract of Jan. 25, 1858.

At that time Somes was mortgager of the demanded premises, and Pierce's lien claim, if any he had, attached exclusively to Somes' right of redemption. It does not appear, from the report of the case, that the necessary legal measures have been taken by Somes, Pierce, or the defendant, to redeem the demanded premises from the plaintiffs' mortgage, and there must be

*Judgment for demandant.*

APPLETON, C. J., CUTTING, WALTON, BARROWS and DANFORTH, JJ., concurred.