## JAMES C. DEYO v. GEORGE H. HAMMOND.

### *Contract—Sale—Condition.*

Plaintiff sold and delivered to the defendant a mare, upon his agreement that if, upon a trial of speed to be made by an agreed driver within 90 days, the mare should trot to pole as fast as a mare owned by the defendant, he would pay an extra $100 for the mare. The defendant, through no fault of the plaintiff or the driver, failed to have the test of speed made. And it is held that, while the parties agreed to abide by the driver's decision as to the speed of the mare purchased of the plaintiff, yet such test was not a vital part of the contract, but only the means provided by the parties for ascertaining the speed of the mare; that the only condition upon which the payment of the $100 depended was that she could trot as fast as the one owned by the defendant; that this fact was made to appear by the undisputed evidence in the case; and that the defendant cannot avoid liability on the ground that, by reason of the sickness of one mare and the lameness of the other, he was prevented from making the agreed test

within the 90 days, he being the only person who had it within his power to have said test made.[1]

Error to Wayne. (Frazer, J.) Argued June 28, 1894. Decided September 25, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Fred H. Warren,* for appellant.

*John D. Conely,* for plaintiff.

LONG, J. 'On January 25, 1888, the plaintiff, who resides at Jackson, this State, sold his mare, the "Shelby Maid," to defendant. The contract was made in Jackson, and the bargain, as claimed by the plaintiff, was that, after Hammond had driven the mare, he offered to give plaintiff his check for $800, and a further sum of $100 if she could go as fast as his (defendant's) mare; that Mr. Moran was to drive them, and make the test, when he had been notified by defendant that he was ready, which test was to be made within 90 days. The plaintiff further testified that Mr. Moran was to decide if plaintiff's mare could go as fast to pole as defendant's, and, if she could, then defendant was to pay plaintiff the extra $100.

The defendant testified that, after going to Jackson and driving the mare, he commenced figuring with Mr. Deyo about buying her. Concerning the terms of the bargain, defendant gave the following testimony:

"I offered Mr. Deyo $900 for the mare if she could go as fast as my bay mare. He says: 'She can go as fast. I will guarantee her to go as fast as your mare.' I said: 'Guaranties don't go. She has got to do it herself.' I says: 'I will give you $800, and take her down there,

---

[1] See notes to *Boettler v. Tendick,* 5 L. R. A. 270, and *Church v. Shanklin,* 17 Id. 207, for a discussion of contract provisions of this nature.

and if she will go as fast as the bay mare I will give you $900 for her,—an extra $100.' * * * He says, ' All right,' and we made the trade then and there. The mare, if she filled the bill, was to be $900; there is no question about that; but otherwise she was to be $800. * * * I was to pay an additional $100 if the gray mare could trot as fast as the bay mare to pole. The test was to be made within 90 days, by Mr. Moran. Mr. Moran was mutually agreed upon to make the test. It would make no difference to me who drove if this mare could trot as fast as mine."

This suit was brought to recover this $100 and interest, and upon the trial the jury returned a verdict in favor of the plaintiff.

It appears that plaintiff took the mare to Detroit and delivered her to defendant, but that Mr. Moran was never notified by either of the parties to make the test, and that the test was never made; the defendant claiming that it was impossible for him to make the test within 90 days for the reason that one mare was sick and the other lame. The plaintiff testified on the trial that the defendant was to notify Mr. Moran when he was ready to make the test, and within the 90 days; while the defendant testified that, though it was mutually agreed that Mr. Moran should make the test, nothing was said about his (the defendant's) notifying Mr. Moran. Defendant's contention here is that he is not liable to pay the additional $100, as by the terms of the contract the plaintiff agreed that the mare purchased should, within 90 days, in a trial of speed to be made by Mr. Moran, trot as fast to pole as defendant's bay mare; that it was impossible to make the said trial within the time fixed by the parties by their contract, by reason of circumstances over which defendant had no control, and for which he was not responsible; that a trial of speed by Mr. Moran, and a decision by him that plaintiff's mare was as fast to pole as defendant's, was a condition precedent to his liability to pay the $100, and, having

never been fulfilled, defendant is discharged from liability.

We think the contract cannot be construed in this way. Defendant, after the purchase, took the mare into his possession, and thereafter kept her. The test was to be made in Detroit. While the parties agreed to abide by Mr. Moran's decision as to the speed of the gray mare, yet the Moran test was not a vital part of the contract, but only the means provided by the parties for ascertaining the speed of the gray mare. The only condition upon which the payment of the $100 depended was that she could trot as fast as defendant's, for he said: "It would make no difference to me who drove if this mare could trot as fast as mine." The plaintiff introduced testimony to show that his mare was 8 or 10 seconds faster than defendant's, and this testimony was undisputed. Defendant was the only party who had it within his power to have the test made, and yet he seeks to set up in this case as a defense his failure to have it made, and thus avoid the payment of the $100.

The case is very similar in principle to *Potter v. Lee,* 94 Mich. 140. There it appeared that the plaintiffs sold a number of cheeses by sample. There was testimony showing a warranty as to the quality of the cheeses. The defendant, however, said to plaintiffs' agent:

"You are a stranger to me, and I have seen only 10 boxes of these cheese, and I don't know what is in the car. If in the course of 10 days we find this cheese as you represent it, we will pay for them."

Within the 10 days some of defendant's customers rejected the cheeses, and refused to pay for them; but defendant continued to make sales for 26 days, and then notified the plaintiffs that the cheeses were not as represented, and refused to pay for them. It was said by this Court:

"It is therefore evident, even if a warranty was made

by Potter as to the quality of the cheese in the car, and not examined at the time by the defendant, that the defendant did not rely upon it, but preferred to make an examination for himself, and was to have the 10 days in which to do it. If he did not make such examination, it was his own fault."

So in the present case. The plaintiff offered to guarantee the speed of his mare. The defendant rejected the offered guaranty, saying that he preferred to make a test of the speed. That he did not do so was no fault of the plaintiff. There is no dispute about Mr. Moran's willingness to make the test. He testifies that the opportunity was never given him. We think, under the undisputed testimony in the case, the court would have been justified in directing a verdict in favor of the plaintiff. In view of this, the other questions raised become immaterial.

The judgment is affirmed.

The other Justices concurred.