JAMES LEFFEL & CO. *v.* PIATT.

1. SALES—NEW CONTRACT—SUPERSESSION OF ORIGINAL.

Where machinery sold under a written contract proved unsatisfactory, and a new contract was entered into for the same machinery, differing from the first only in that it omitted an express warranty of the machinery, and retained title in the seller until payment of the purchase price, and gave the purchaser a stipulated time in which to accept and approve the machinery, the old contract was entirely superseded, as a matter of law, and the purchaser could not rely on the warranty therein.

2. SAME—ACCEPTANCE OF PROPERTY.

Where a contract for the sale of machinery gave the purchaser a certain time in which to accept and approve the same, and, before the expiration of the period, he notified the seller that the machinery was not satisfactory, leading to negotiations and efforts on the part of the seller to have the defect remedied, extending beyond the time limited in the contract, an acceptance by the purchaser will not be implied at the end of the time specified

3. SAME—AGENT'S AUTHORITY—EVIDENCE.

Where, in an action for the purchase price of machinery, it appeared that, the machinery failing to work satisfac-

torily, the seller, with the knowledge of the purchaser, instructed the manufacturer to remedy the defect, and the latter undertook to do so, and finally entered into a contract with the purchaser whereby the machinery was accepted, the authority of the manufacturer to act for the seller was sufficiently shown, and the purchaser was bound by the contract.

4. SAME—CONTRACTS—CONSIDERATION—MERGER OF ORAL AGREEMENTS—ACCEPTANCE OF PROPERTY BY PURCHASER.

A purchaser of machinery complained that it did not work satisfactorily, and the seller undertook to remedy the defect. After extended efforts in that direction, the parties executed an agreement whereby the purchaser was to accept or return the machinery within 30 days. *Held:*

(1) That there was a sufficient consideration for the agreement.

(2) That prior oral understandings were merged therein.

(3) That the retention of the machinery beyond the time stipulated amounted to an acceptance.

5. SAME—JUDGMENT FOR PURCHASE PRICE—INTEREST.

Where a contract for the sale of machinery provided that deferred installments of the purchase price, to be represented by promissory notes, should bear interest from the date of the contract, and by addendum it was provided that notes to a specified amount should remain unexecuted for a given time, awaiting the acceptance and approval of a certain portion of the machinery, a judgment for the purchase price of such portion properly included interest from the date of the contract.

Error to Ingham; Wiest, J. Submitted December 5, 1900. Decided May 7, 1901.

*Assumpsit* by the James Leffel & Company against Alamanzo A. Piatt to recover the balance of the purchase price of certain machinery. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*Russell C. Ostrander*, for appellant.

*Cahill & Wood*, for appellee.

MONTGOMERY, C. J. On the 6th of May, 1897, plain-

tiff made a contract with defendant to sell him a quantity of machinery, including turbines, wheels, and appurtenances, and one Reynolds governor, at the agreed price of $3,759, in payments of $800 cash, and the remainder in installments of $150 per month, to be represented by notes bearing interest at 7 per cent. This contract contained a guaranty of the governor, reading as follows:

"We guarantee the governor to be of proper construction and design for the duty required of same. With ordinary running of your water-wheel plant, speed not to exceed 1½ per cent. above or below normal; with changes of load not exceeding 25 per cent., speed not to vary more than 4 per cent. above or below normal; with change of load not exceeding 50 per cent., speed not to vary more than 6 per cent. above or below normal. This governor is of latest and most improved patterns and of special design for the duty required of same, when placed and operated in combination with the turbines and machinery, as specified above, and as per our plans and specifications."

The machinery was delivered to defendant under this agreement. The Reynolds governor was installed October 30th, but the one first delivered did not work as expected, and on February 9, 1898, another governor was substituted for the first. Both these governors were put in place by representatives of the Reynolds Turbine Governor Company. Meantime the plaintiff, through Mr. C. C. Wood, its attorney, and by correspondence, was asking for a settlement. On December 9th a contract of sale of the identical machinery named in the original contract was drawn up and signed by plaintiff, by C. C. Wood, its attorney, and was also signed by defendant. This contract bore date of September 8, 1897, and differed from the original contract in the following particulars: It provided that the title to the property delivered should remain in plaintiff until paid for. It omitted the warranty of the governor contained in the first contract, but had an addendum indorsed thereon as follows:

"It is hereby understood and agreed by and between

the parties to the foregoing contract that the governor hereinbefore mentioned has not been at this date accepted or approved by the party of the second part, and that notes to the amount of seven hundred nine dollars ($709.00) are reserved and left unexecuted until a reasonable time shall have been allowed, not to exceed seven months from this date, for such acceptance and approval."

This was signed, like the main agreement of the same date, by defendant and by plaintiff, by C. C. Wood, attorney. The purpose of this agreement is made more clear by the following correspondence, which preceded it:

"LANSING, MICH., November 2, 1897.
"JAS. LEFFEL & CO.,
       "Springfield, Ohio.
"*Gentlemen:* Mr. Reynolds was here on Saturday, and installed the governor. He was quite surprised to find that we were to do street-car work. We told him that, if we had to run an engine for the purpose of governing our load, we would not expect to keep the governor. He consented to that, and put it in. With such means as we had to make a test, it was not satisfactory. However, will give it further trial a little later, and see what it will do.                                    A. A. PIATT."

"SPRINGFIELD, OHIO, U. S. A.,
                       "November 3, 1897.
"Mr. A. A. PIATT,
       "Lansing, Mich.
"*Dear Sir:* We have your favor of the 2d inst., and note contents. We are pleased to learn that you have the governor installed, and we shall hope that you will have no cause for complaint when you have been able to give it a fair test under favorable circumstances, which you state it has not yet had.

"We note that you made a call on our Mr. Wood to make settlement, but he was out of the city. We, of course, regret this, as we are very anxious indeed to get this season's sales closed up as promptly as possible; but we have written them a line today to give the matter attention immediately on his return.

"Trusting that everything will turn out satisfactorily, we remain,          Yours truly,
            "The JAMES LEFFEL & CO.,
                       "Per K."

"SPRINGFIELD, OHIO, U. S. A.,
                      "December 6, 1897.
"Mr. A. A. PIATT,
          "Lansing, Mich.

"*Dear Sir:* We are just in receipt of a letter from Messrs. Wood & Wood, inclosing your check for $300.88, to apply on your account, and for which please accept our thanks. They state that you claim the governor is not giving satisfaction, and we wish that you would please submit to us a statement of just wherein the governor is not satisfactory. Give us all the information you possibly can concerning it, as we desire to submit it to the manufacturers of the governor, so that they can take the matter up with you, and have the matter straightened up, if possible. We have also written our attorneys concerning the matter of final settlement with you, and we would be obliged if you would give it your early attention, as we would like to have the papers back here at least before the 14th inst., as we close up our books on that date for this present year, and, of course, are anxious to get as many accounts as possible closed up.

"Trusting this will receive your prompt attention, we remain,          Yours truly,
                      "The JAMES LEFFEL & CO.,
                                "Per K."

The seven months provided by the contract of September 8, 1897, expired April 8, 1898. On January 12, 1898, defendant wrote, stating that the governor did not do its work, and that he had been obliged to discontinue its use. On the 14th the plaintiff replied that they had taken the matter up with the Reynolds Turbine Governor Company, with instructions to them to communicate with defendant at once, so that they (the governor people and defendant) could get together and devise some means by which the trouble might be overcome. On May 20, 1898, defendant wrote plaintiff as follows:

"We are unable to use the governor installed by the Reynolds people, after giving it a thorough trial, and have discontinued its use some time ago, in disgust, and advise you that it is here, subject to your order."

On the 31st of October plaintiff wrote defendant, referring to this governor, as follows:

"We have been advised by the Reynolds Turbine Governor Company, of Albany, N. Y., of the recent installation and test of their governor, and they send us copy of your letter to them, dated October 20th, and they state that they are giving you 30 days in which to test the governor; testing date from Tuesday, October 18th. We shall hope that the governor will meet your requirements and prove entirely satisfactory,' as we are very anxious, as well as the governor people, to have the matter adjusted, as, no doubt, you are, also."

It appears that a representative of the Reynolds Turbine Governor Company came on to Lansing, and spent considerable time in making changes in the governor and putting it in condition. Finally, on the 12th of December, 1898, defendant made the following agreement:

"LANSING, MICH., December 12, 1898.
"To the REYNOLDS TURBINE GOVERNOR COMPANY,
"95 State St., Albany, N. Y.
"*Gentlemen:* I herewith agree to run the governor you have installed here for a period of 30 days from date, and if at the expiration of that time (January 12, 1899) it proves itself satisfactory to me, and you will furnish me with a written guaranty for one year, I will send you a written acceptance for the machine. If, however, the machine does not prove itself satisfactory by January 12, 1899, I will remove, pack, and ship it to New York at my own expense, you paying freight.
"Yours faithfully,
"A. A. PIATT."

On the 10th of January, 1899, the Reynolds Turbine Governor Company forwarded to defendant a warranty for one year that the governor would not develop any inherent mechanical defects, other than those caused by ordinary wear and tear, and that any new parts made necessary through such wear and tear, other than those occasioned by the elements or by accident, would be furnished free of charge.

Defendant testified that, at the time of the agreement of December 12th, it was agreed by Mr. Sturgess, the representative of the governor people, that he would send some additional attachments. It does not appear that

these additional attachments were material to the working of the governor, or to aid the defendant in determining whether he would be willing to accept it. The correspondence following upon this indicates that they were not.

On January 12, 1899, defendant wrote the Reynolds Turbine Governor Company as follows:

"*Gentlemen :* We have had the governor in use since your Mr. Sturgess was here, and with the load that we had when he was here. It has worked quite satisfactory, indeed. The capitol people have not had their pump load ready to start, which we expected to start at the time Mr. Sturgess was here, but they say they will be ready to start tonight; and, if the governor handles that load as we expect it will, we shall be pleased with, and hope to report definitely by tomorrow, or next day at furthest. Shall be pleased to show this machine to any parties you may refer here, and, anything can do for you, glad to do it.                          Yours truly,
                                  "A. A. Piatt."

Nothing further was done until March 4, 1899, when he wrote to the plaintiff, again stating that the governor would not do its work.

The declaration counts on the agreement of September 8, 1897, and, in the first count, avers that the seven months stipulated in the addendum have elapsed, and that defendant did not reject the governor in that time, and became liable to pay for the same. In the second count the agreement of December 12, 1898, addressed to the Reynolds Turbine Governor Company, is set up, and averred to have been made on behalf of plaintiff; and it is averred that defendant has, under the terms of said agreement, accepted the governor. The circuit judge directed a verdict for plaintiff, and defendant brings error.

The important questions are whether the contract of date September 8, 1897, superseded the first contract of purchase, and whether, if, it did, there has been an acceptance of the governor. While there are numerous assignments of error, the counsel for defendant, in his

126 Mich.—29.

main brief, has very properly sought to treat the case in its entirety and with reference to the controlling questions above stated, treating the other questions involved as incidental to or controlled by these.

It is contended that the defendant was entitled to assert a continuing warranty that the governor would control variations of speed within certain limits, and that it was adapted to the use to which it was to be put. Obviously, the question of whether the defendant had the right to rely upon the express warranty set up depends upon whether the original contract is or is not in force. We think it altogether clear that the contract of date September 8, 1897, superseded the first contract between the parties. There is nothing on its face to indicate that it was intended to be supplemental. It covered all the property mentioned in the first,—contained an additional provision, it is true, and, in the body of the instrument, omitted any warranty. The property had at this time, however, been delivered, and a question had arisen as to its sufficiency. What more natural than that, in place of relying upon a guaranty, the defendant should insist on an opportunity to make a trial? This he did do. The result was the addendum indorsed on the agreement. The entire subject-matter of the first contract was covered, and, when this is apparent, it is held that a second written agreement supersedes the first, as matter of law, and that it is a question for the court. *Cocheco Bank* v. *Berry*, 52 Me. 293; *Chrisman* v. *Hodges*, 75 Mo. 413; *Stow* v. *Russell*, 36 Ill. 18; *Mather* v. *County of Butler*, 28 Iowa, 253. The case of *Holm* v. *Colman*, 89 Wis. 233 (61 N. W. 767), cited by defendant's counsel to the point that it was at least a question for the jury as to whether the second contract superseded the first, is quite a different case from the present. In that case the second contract related to another lot of logs than those mentioned in the first. One of the letters which formed a part of the second contract was lost, and the court states that it was in no way definitely proved, and that much of the

detail of the contract was left to implication or inference,
and so it became a proper question of fact for the jury.
If we grant that the case was rightly decided on its facts,
it furnishes no precedent for the one now under consider-
ation.

It is contended by plaintiff that if it be once determined
that the contract of September 8, 1897, superseded the
first contract, the defendant must be held to have ac-
cepted the governor, inasmuch as the seven months pro-
vided for the test have expired; and this is the theory of
the first count.    We think, however, that this position is
untenable.    The evidence shows that as early as January
12, 1898, the defendant notified the plaintiff that the gov-
ernor did not work, and the plaintiff took up the matter
with the Reynolds Turbine Governor Company, in the
effort to devise some means by which the trouble could be
overcome.    It does not seem to us that while these nego-
tiations were pending, and the effort being made under
plaintiff's direction, either party understood that the obli-
gation of making the test rested solely with defendant, or
that his time for doing so was running.

This leads us to a consideration of the agreement of
December 12, 1898.    The circuit judge was of the opinion
that the agreement was binding on the defendant, and
that he, having failed to reject the governor within the
time fixed, was bound to pay for it.    It is contended that
the Reynolds Turbine Governor Company had no author-
ity to act for the plaintiff in making the contract of
December 12th, and that Mr. Sturgess, its representative,
disclaimed such authority.    Defendant testified:

"I asked Mr. Sturgess if he had any authority from the
Leffel people in regard to that governor, and he said,
'No;' he was there for the Reynolds people, and they told
him to bring home the governor if he could not get any
satisfaction or any settlement.    I told him we would have
to have an order from the Leffel people before I could let
him take the governor out, and I did it thinking I was
responsible to them for it, and he left it alone."

It is doubtless true that Sturgess had no direct authority to act for the plaintiff. He took his directions from the Reynolds Turbine Governor Company. But this leads to the inquiry as to the authority of that company. As pointed out above, the reason for saying that the retention of the governor beyond the seven months was not an acceptance is that the matter had been referred by plaintiff to the governor company. Again, on the 31st of October the plaintiff wrote defendant, plainly implying authority in the governor company to make arrangements giving time for a test. The agreement fully recognizes the authority of the governor company to act for plaintiff, and the plaintiff ratified it by bringing suit. Defendant had notice from plaintiff that it looked to the governor company to make the governor good, and that it had instructed the company to attempt to do so, and there is no evidence that this authority was withdrawn. We think, therefore, that authority to act for plaintiff was sufficiently shown.

It is contended that no consideration moved between the promisor and promisee. If there was authority to act for plaintiff, as we have held, there was ample consideration in the adjustment and settlement of differences.

It is claimed that the agreement was executed with the understanding that a trial of the machine with the load of the capitol elevator was to be made; but the answer to this is that, if there was such an oral talk as related to any time after the 30 days, it was merged in the writing.

It is claimed that the testimony shows that the paper was executed with the distinct understanding that no rights of the defendant as against the plaintiff were to be affected. What the defendant testified to was as follows:.

"He also asked me if I would recommend this governor, as he had parties in this neighborhood that were wanting a governor. I told him I certainly would, if that governor proved satisfactory; I would be very glad to help him all I could. And I asked him what force this. document would have as between the Leffel people and.

myself. He said that was not the purpose; that he wanted it to show his people that he had been here and done a considerable work, and that this paper would help him. The different men that came here—I think, without an exception—pressed me for an acceptance of that governor, stating it was all right and would do the work, although we hadn't any way of testing it, because we hadn't any load; and I refused to do it."

If this testimony is to be received to negative the terms of the writing, it would show equally that the agreement was not binding as between the governor people and defendant. We think it incompetent for such a purpose. Whatever the oral understanding was, it merged in the writing, which was something quite different from a recommend,—something more even than an expression of satisfaction. It was a contract, by the terms of which the defendant engaged to act,—to either accept the machine, or prepare and ship it out. We think it must be held that this contract was a final adjustment of perplexing difficulties, and was broken by the defendant, and he must be deemed, in law, to have accepted the governor, and is bound to pay for it. *Deyo* v. *Hammond*, 102 Mich. 122 (60 N. W. 455, 25 L. R. A. 719); *Potter* v. *Lee*, 94 Mich. 140 (53 N. W. 1047).

It is contended that the judgment is excessive. There was included in the judgment interest from September 8, 1897. The agreement of that date provided for payment of all unpaid portions of the purchase price, with interest at 7 per cent. from its date. The addendum provided that the notes should remain unexecuted until a reasonable time, not exceeding seven months, had expired for acceptance. It was contemplated that, when the acceptance should take place, it would constitute an acceptance under the terms of the main contract. This provision for payment is the only one the parties have made.

The judgment will be affirmed.

HOOKER, MOORE, and LONG, JJ., concurred. GRANT, J., did not sit.