ANNA MARIA WETTER v. EDWARD KARELS
AND ANOTHER.[1]

November 10, 1927.

No. 26,182.

**Promise of payment on happening of contingent event construed as discharged.**
    A contract of 1885 contained many executory provisions, among others one for the payment of $2,500 on the happening of a stated but contingent event. In 1897 that contract was supplanted by another, repeating many of the terms of the old but silent as to the $2,500 payment, there having been in the meantime substantial payments not contemplated by the original agreement. The new contract was accompanied by a formal and complete release of the old agreement. *Held*, that the promise in the first contract to pay the $2,500, not having been repeated by the new contract, must be considered discharged.

Contracts, 13 C. J. p. 598 n. 98.

Plaintiff appealed from a judgment of the district court for Carver county, Tifft, J. Affirmed.

*Ohman, Fryberger & Wangaard,* for appellant.

*W. H. Lundstrom* and *F. R. Allen,* for respondents.

STONE, J.

The remedy sought by this action is the cancelation of a conveyance of farm land or, in the alternative, that a mortgage of $2,500, later referred to more in detail, be adjudged a lien in plaintiff's favor. From an adverse judgment she appeals.

The real estate is a Carver county farm, which in 1885 included the homestead of plaintiff and her husband, Johann Abraham Wetter. In September of that year they conveyed to their son, Wilhelm Wetter, subject to "a certain contract of annuity of even date." The contract so referred to recited the conveyance to the son and in con-

[1]Reported in 216 N. W. 248.

sideration first obligated the latter to pay $125, "being one half of a certain note" there referred to. Then followed, serially, 11 numbered paragraphs, each imposing a definite and separate obligation on the son Wilhelm. No. 1 bound him for the payment of a "yearly rent and annuity" of $100 payable to the parents in semi-annual instalments of $50. Provisions 2 to 9 required the son to furnish his parents yearly with certain provisions and to provide pasture and feed for a horse and cow. The 10th reserved to the parents the "exclusive use and possession of one acre" of the land for a home site, and the 11th and last provided that the work of building a house for the parents, "except the mason work," should be done by Wilhelm and a brother.

There followed next an unnumbered paragraph obligating Wilhelm Wetter to pay $500 after the death of his parents to three brothers and a sister. Finally there came, also unnumbered, a provision that, in case Wilhelm should "sell or dispose of the aforesaid land which land is the consideration of this contract of annuity," the parents should notwithstanding continue in the use and possession of the one acre reserved to them and of an appurtenant cartway, and that in such event, "the Grantee or Grantees in such conveyance [by the son] shall not be required to furnish to said parties of the second part any of the articles above enumerated as the annuity and yearly rent and numbered consecutively from one to ten inclusive; but in such case in lieu of said yearly rent said party of the first part or his Grantee or Grantees shall pay to said parties of the second part or either of them the sum of $2,500." In this connection the parties stipulated for a mortgage for the purpose of securing payment of the $2,500 last referred to "and of all other money and articles hereinbefore agreed to be paid" to the parents. Such a mortgage was given the parents as mortgagees and, together with the original contract and the subsequent documents herein discussed, was duly filed for record with the register of deeds.

The arrangement first made went into effect immediately. A new home for the parents was built on the reserved acre and occupied

by them. In 1887 Wilhelm made a cash payment of $1,000 to his parents, in consideration whereof they gave him a partial release of the annuity contract of 1885, which discharged only "Article No. 1 thereof" calling for the annual payment of $100. Again in November of 1888 there was another cash payment of $1,000, and again his parents furnished Wilhelm with a formal partial release of the contract of 1885. After reciting, as a consideration, the second $1,000 they had just received, they expressly released all their "right and title to the payment of all such sums mentioned" in the original contract. The release expressly stated that "all other provisions" thereof "marked No. 2 to 11 inclusive shall stand in force as therein mentioned," the original contract being again partially discharged in so far "as above stated."

Thus the situation remained until 1897. In June of that year there took place between parents and son a transaction which is evidenced first by a new annuity contract and next by a concurrent and formal discharge of the original of 1885. That satisfaction, unlike the two former partial releases, was unqualified and "fully satisfied" the original contract and expressly authorized the register of deeds "to discharge the same upon the record thereof." The new "annuity contract" again referred to the original conveyance of the farm as the consideration for the undertakings assumed by the son. It contained eight numbered paragraphs, each a separate and definite covenant by the son. For the most part, they again refer to provisions to be furnished the parents. The eighth and last was a mere repetition of the original stipulation with reference to the "exclusive use and possession" by the parents of the acre originally set apart for their home. This new compact not only expresses no agreement by the son to make money payments but is also silent with respect to such undertakings of the original contract. It does not repeat or even refer to them. The mortgage of 1885 was not referred to in any of the subsequent documents. It has never been formally satisfied or discharged in whole or in part.

In April, 1921, the son, Wilhelm, became the losing party in a divorce action. His wife was allowed a substantial alimony, which was made an express charge upon the farm in question. There

being a default in the payments so imposed upon Wilhelm Wetter, the farm was sold for their satisfaction and purchased by Louis Karels, who has since conveyed to defendant Edward Karels. Both of them have recognized the obligation to furnish plaintiff (her husband and cograntor having departed this life in 1899) the provisions stipulated for in the annuity contract of 1897. The decision below and judgment make explicit provisions for the further performance of that contract. But plaintiff insists that her son, Wilhelm, having lost title to the farm, has disposed of it within the meaning of the original covenant of 1885 and that thereby the provision of that contract, making enforceable the $2,500 mortgage, has become operative, and that she is now entitled to have that mortgage enforced accordingly. Originally the purpose of the action was the cancelation of the original conveyance of 1885, but as we understand it now, the prayer of plaintiff is confined to one for the enforcement in her favor of the lien of the mortgage as security for the $2,500 payment.

To us it seems that a mere orderly setting down of the facts of the case is sufficient for its decision. In 1897 the parties were bound by the original contract as modified by the partial releases of 1887 and 1888. The parents had been paid $2,000, which was more than the son had agreed to pay. It was entirely competent for them on their part, in consideration of those over-payments, to annul the whole contract. They did not go that far but made the new contract of 1897. As already emphasized, it was significantly silent concerning the old stipulations for the payment of money and expressed no new undertaking of that kind. Moreover, it made express enumeration of all the remaining obligations of the son. With such a catalogue of promises, it requires something more than we have in this case to justify a holding that any independent terms of an old and supplanted contract, not repeated and not even referred to in the new, could remain in force. The new agreement must be held a substitute for and not a mere supplement to its predecessor. Cocheco Bank v. Berry, 52 Me. 293; Bridges v. Sheldon (C. C.) 7 F. 17; Stow v. Russell, 36 Ill. 18; Howard v. Scott, 98 Mo.

App. 509, 72 S. W. 709. That intention is put beyond doubt by the concurrent, formal and complete discharge of the old agreement.

It follows that, whatever other effect the mortgage for $2,500 may have, it no longer stands as security for the obligations of the contract of 1885 which were not retained by that of 1897. The covenant to pay $2,500 in case the son disposed of the farm may be assumed to cover the loss of it under the adverse judgment. But that promise, for the reasons already considered, must be deemed discharged, and the mortgage cannot stand or be enforced as security for an obligation which does not exist. It is equally plain that the original conveyance cannot be canceled.

Judgment affirmed.