SUPREME LODGE OF KNIGHTS OF PYTHIAS *v.*
ANDREWS ET AL.

[No. 4,375.   Filed June 23, 1903.   Rehearing denied October 9, 1903.]

BENEFICIAL ASSOCIATIONS.—*Members.*—*Resort to Court.*—A member of a mutual benefit society is not required to exhaust his remedies within the order before resorting to the courts, unless the by-laws of the society make it obligatory upon him to do so. *pp. 428, 429.*

SAME.—*Rejection of Members.*—*Evidence.*—Plaintiffs brought suit on a policy of insurance in a beneficial association, alleging that after the issuance of the policy the association created a new class to which members could pass by paying certain increased assessments and passing a medical examination; that some years before his death the deceased made application to be transferred to such class and at such time was "in perfect physical and mental health and condition" and was arbitrarily refused admission thereto. Physicians and others testified that at the time he made application for transfer his physical and mental conditions were good. The evidence further showed that his examination disclosed a pulse rate, claimed by the examiner in chief to be excessive for a man at age of applicant and for such reason he was rejected by the medical examiner in chief, and no attempt was made to prove that the pulse rate was not excessive. *Held,* that the complaint was not sustained by the evidence. *pp. 423-431.*

EVIDENCE.—*Action on Insurance Policy.*—*Heirs as Witnesses.*—Heirs of insured were not incompetent witnesses, under §507 Burns 1901, as to the health of insured when he made his application, in an action on an insurance policy payable to the "legal heirs" of insured. *pp. 431, 432.*

From Clay Circuit Court; *P. O. Colliver,* Judge.

Action by Peter Andrews and others against the Supreme Lodge of Knights of Pythias. From a judgment for plaintiffs, defendant appeals. *Reversed.*

*C. S. Hardy, S. M. Ralston* and *G. A. Knight,* for appellant.

*S. D. Coffey, S. M. McGregor* and *A. W. Knight,* for appellees.

COMSTOCK, P. J.—The appellees, plaintiffs below, are the heirs at law of John Andrews, deceased, and base their two paragraphs of amended complaint upon the membership of said John Andrews in appellant society. The appellant is a secret fraternal beneficiary society, incorporated for charitable and benevolent purposes, under the act of congress, approved June 29, 1894. There are various subordinate branches or lodges of the appellant located in the several states of the United States; one of such lodges having been established in Brazil, Clay county, Indiana, since 1877. The particular subordinate branches of appellant referred to are known as "sections of the Endowment Rank," the Endowment Rank being the insurance branch of the appellant, and an unincorporated but integral part of the appellant. This Endowment Rank is under the direct control and management of a board of control appointed by the appellant. All of the laws governing the Endowment Rank are made by the appellant in its representative conventions. John Andrews, the ancestor of the appellees, became a member of section twenty-five of the Endowment Rank, located at Brazil, in February, 1878. Upon becoming such member, the appellant issued to said John Andrews a certificate of membership in its second class, which provided that "in consideration of the representations and declarations made in his application, bearing date of January 21, 1878, which application is made a part of this contract and the payment of the prescribed admission fee; and in consideration of the payment here-

after to said Endowment Rank of all assessments as required, and the full compliance with all the laws governing this rank now in force or that may hereafter be enacted and shall be in good standing under said laws, the sum of $2,000 will be paid by the Supreme Lodge Knights of Pythias of the World, to such person or persons as the said brother may direct in his application or as shall be made by him subsequently by will, or otherwise, and entered upon the records of the supreme master of exchequer, upon due notice and proof of death and good standing in the rank at the time of death, and the surrender of this certificate." In 1884 there were 15,000 members in the second class, so that, upon a death occurring in that class, the member's beneficiaries would receive the $2,000 as the maximum amount to be paid according to the terms of the agreement. In April and May, 1884, the appellant amended various of its laws, and created a new (fourth) class of said Endowment Rank. Prior to the creation of the fourth class, there were but three classes: The first, wherein the maximum amount to be paid upon the death of a member was $1,000; the second class, of which John Andrews was a member, and the third class, wherein the maximum amount to be paid upon the death of a member was $3,000. The amount of the payments or assessments required of the members of these three classes depended upon the number of deaths occurring. The plan adopted, and upon which the fourth class was established, was an entirely different one. In that class a member carried $1,000, $2,000, or $3,000 of insurance, as he might desire, and his payments were fixed and were regular amounts payable monthly. The amount of insurance carried and the age of the member determined the amount of the monthly payment required of the members of the fourth class. By the terms of the appellant's laws of 1884 creating the fourth class, all members of the first, second, and third classes were permitted to transfer their membership to the fourth class without any

cost or expense to them, and were given one year to make such transfers. This time within which transfers could be made was extended to October, 1885; and it was again provided that the members could transfer "without the payment of any fee, and without the passing of a new medical examination." In June, 1888, appellant's supreme lodge amended its laws with respect to the transfer of the old class members to the fourth class, permitting such transfer of all members of the old classes, but thereafter requiring applicants for transfer to make application on a prescribed blank, "be recommended by some competent practicing physician appointed by the board of control of the endowment rank and be examined in accordance with the published rules for medical examiners on the form provided by said board of control, which must be approved by the medical examiner in chief." It was also provided that the age of an applicant for transfer to the fourth class should not be considered. The officers of appellant presented to the members of the old classes the advantages of transferring to the fourth class. In October, 1885, there were less than 2,000 members remaining in the second class; and on the 26th day of January, 1900, the date of the death of John Andrews, there were only twelve members in said second class. When the opportunity to transfer to the fourth class was first given to the members of the old classes, John Andrews failed to transfer. But in March, 1889, he made application to transfer. In his said application for transfer to the fourth class, Andrews agreed, among other things, "and that I will be governed and this contract shall be controlled by all the laws, rules, and regulations of the order governing this rank, now in force, or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or submit to the penalties therein contained."

Andrews' certificate of membership, issued in 1878, was based upon an agreement expressed therein, as follows: "In consideration of the payment hereafter to said Endow-

ment Rank of all assessments as required, and the compliance of all the laws governing this rank now in force or that may hereafter be enacted." One of the laws of appellant, then in force, was the requirement that the applicant for transfer should be examined and recommended by a practicing physician, and approved by the medical examiner in chief. At the time of making the application for transfer, Andrews was sixty-two years old. Another one of the laws of appellant in force at the time was one fixing the amount of and requiring monthly payments of members in the fourth class. Andrews was examined by the appellant's local physician at Brazil, Indiana, and was, on the 16th of March, 1889, recommended for admission to the fourth class by said local examiner; and in his report, among other things, the local medical examiner said that Andrews' pulse rate, while sitting, was seventy-six, and standing, was eighty. The application and medical examination was submitted to the medical examiner in chief at Cincinnati, Ohio, who disapproved same on April 2, 1889. The medical examiner in chief indorsed on the application his grounds of disapproval, as follows: "Excessive pulse rate for age." Two years later, at the meeting of the board of control of the Endowment Rank, held in January, 1891, Andrews asked that his application for transfer be reconsidered, which was done, and the board re-referred it to the medical examiner in chief for his reconsideration. The medical examiner in chief reported back to the board of control that, by reason of the applicant's physical condition, he could not recommend the transfer of the applicant. This action of the physician in chief was approved by the board of control, and Andrews was advised of the final rejection of his application. At the time of Andrews' rejection for transfer he was entitled to an appeal from such rejection to the supreme lodge of appellant, and it was agreed at the trial that Andrews did not take an appeal from the action in rejecting his application for admission

to the fourth class. After his application was rejected Andrews kept alive his membership in the old second class by making such payments as were required of him as a member of the second class, down to the time of his death, in May, 1900. Had Andrews' application been accepted, his payments would have been $5.70 each month, and his total payments down to the time of his death would have been $777. The payments required of him in the second class, and which he made from the date of his rejection to the time of his death, were fourteen in number, amounting to $15.40.

No evidence was offered that, after the rejection of his application, Andrews offered to pay the amount that would have been due from him had he been transferred to the fourth class. It was admitted at the trial that if John Andrews was a member of the second class at the time of his death, his beneficiaries were entitled to only $12, which sum the appellant tendered to appellee, and was rejected by them, before the bringing of this suit. It was also admitted that at the time of the death of Andrews there were a sufficient number of members in the fourth class to pay a membership certificate therein to the maximum amount. The case was tried by the court without a jury, and a judgment was rendered in favor of the appellees and against appellant for $1,238.40, and it is from this judgment that this appeal is prosecuted.

The appellees contend that at the time when Andrews made application for transfer he was in perfect physical and mental health and condition; that he did all that he could do to effect his transfer, and that appellant arbitrarily and without any justification, valid or legitimate excuse, and simply because of his age, rejected his application for transfer, after having depleted the membership of the second class; and that, therefore, appellees were damaged in the sum sued for.

Appellant filed its plea in abatement in which it set up subsantially the facts in the case, and the laws of the appellant applicable thereto, as stated above, and also that, by reason of the facts set out, of which James Andrews had knowledge, and his acquiescence in the decision of the medical examiner in chief and of the board of control in rejecting his application, and by reason of his failure and refusal to appeal from the action of such board of control in the premises to the supreme lodge of the appellant, that the court had no jurisdiction of the subject-matter of the controversy. A demurrer to this plea was sustained. A demurrer to each paragraph of the complaint was then filed and overruled. Appellant answered in two paragraphs—(1) by general denial; (2) special facts of estoppel. A demurrer to said second paragraph was sustained, and the cause was tried upon the two paragraphs of the complaint and the general denial. Appellant assigns as errors the action of the court, (1) in sustaining appellees' demurrer to the plea in abatement; (2) in overruling the demurrer to the first and second paragraphs of the complaint, respectively; (3) in sustaining appellees' demurrer to the second paragraph of appellant's answer; (4) in overruling appellant's motion for a new trial.

In support of the plea in abatement, the position of appellant is that it had the right to establish the fourth class. It was the privilege of James Andrews to remain in the second class, or apply for transfer to the fourth class. When he was rejected as an applicant for transfer he had the right to appeal from the order of rejection to the supreme lodge. If he was dissatisfied with such rejection, it was his duty to appeal, and thus exhaust his remedies in the order. Failing to do this, neither he nor his representatives can come into this court and be heard to complain. The rule for which appellant contends—that the court will not entertain the complaint of a member of a society, as against such society, until such member has exhausted his

remedies provided within the order—has been declared in the courts of last resort in a number of states; but, under the decisions of this State, the right of the aggrieved party to appeal beyond the board of control in organizations of the kind in question has been held to be permissive only. In other words, a member of a mutual benefit society is not required to exhaust his remedies within the order unless its by-laws make it obligatory upon him to do so. He may avail himself of the rights to appeal within the order, or resort to the courts of law. The by-laws in the case before us do not make an appeal to the supreme lodge obligatory, and therefore the court did not err in its ruling upon this pleading. *Bauer* v. *Samson,* 102 Ind. 262, 270; *Supreme Counsel, etc.,* v. *Garrigus,* 104 Ind. 133, 54 Am. Rep. 298; *Voluntary Relief Dep., etc.,* v. *Spencer,* 17 Ind. App. 123.

The complaint alleges that Andrews complied in every particular with every requirement of the lodge, and that his application for transfer was rejected arbitrarily and without just cause. The demurrer was properly overruled.

Is the finding of the court sustained by sufficient evidence? We are of the opinion that this must be answered in the negative. The complaint alleges that at the time of making his application for transfer, James Andrews was "in perfect physical and mental health and condition; * * * that on the 2d day of April, 1889, said Querner arbitrarily, and without any valid or legitimate excuse or cause, disapproved said examination, and rejected said application peremptorily, because of the advanced age of the said Andrews, and for no other reason or cause; * * * that, at the time said application for transfer was made, said Andrews possessed all the requirements demanded by the constitution and by-laws; * * * that he tendered all fees necessary, and fully complied with all the rules and regulations entitling him to be transferred; * * * that he was then, and continued to be up to the time of his

death, ready and willing to pay whatever assessments, dues, and fees were imposed upon the members." To sustain the finding of the court, these facts should have been proved. As to the physical and mental condition of the decedent, Dr. Gifford testified that he had known him for thirty or forty years, but gave no testimony as to his condition prior to his last sickness. Dr. Black testified from the examination made of decedent, answering in the plural to his physical and mental condition: "They were good. They were good, sound, and healthy." Dr. J. D. Sourwine testified that he knew the insured, but had never treated him as a physician; that he had the appearance of being a healthy man for his age. The other witnesses in behalf of the appellees were non-experts. They observed Andrews as one acquaintance observes another, and testified that he appeared to be in good health. Opposed to the testimony of Dr. Black there is the written report of Dr. Querner that the applicant's pulse rate was too high. Dr. Black's report gave the pulse rate. Dr. Querner said that it was too high. Nothing was said by the three physicians who testified in behalf of appellees about the pulse rate. One with excessive pulse rate may look well, and rarely have a day's sickness. Dr. Querner examined the application of Andrews, and rejected it because, for a man of his age, the pulse rate was excessive—"seventy-six when sitting, and eighty standing." The court can not say that this was or was not an excessive rate. The testimony of Dr. Querner was uncontradicted. It will not be questioned that the medical examiner might properly reject an applicant with an excessive pulse rate. It would be his duty to do so. A rejection upon such ground would not be arbitrary, but based upon reason. "Had the examiner refused him because he was not, in his judgment, possessed of the proper physical qualifications, it might well be that the examiner's opinion, in the absence of fraud or mistake, at least, would be final and conclusive against him, but no such question is here

presented. On the contrary, the disapproval is arbitrary and without cause, solely by reason of his age, which, by the express letters of the society's law, is not a reason for rejection." *Sourwine* v. *Supreme Lodge, etc.*, 12 Ind. App. 447, 54 Am. St. 532. The constitution and by-laws require the applicant to be examined in certain ways, to be recommended by the local examiner, and approved by the medical examiner in chief.

Whether the insured was willing and ready to pay whatever was required of him as a member of the fourth class does not appear. The by-laws do not provide for the personal examination of the applicant by the examiner in chief. His action is based upon the written report of the local examiner, and the existence of the fact for which the application was rejected is not disputed. The proposition that the arbitrary rejection of an application for membership can not defeat the rights of the applicant is not to be disputed, but in the case before us the medical examiner in chief exercised his judgment as a physician upon the evidence, upon which alone he was authorized to act. No attempt was made to prove that the pulse rate was not excessive, nor that it was less than seventy-six when sitting and eighty when standing, nor that a man of the age of the insured should have a pulse rate as high as that given in the report of the local medical examiner.

Certain of the appellees, heirs of the decedent, were permitted to testify in behalf of the appellees. In his application for membership, he stated that he desired the benefit paid to his "legal heirs." Appellant claims that under §507 Burns 1901 said witnesses were incompetent. These witnesses were competent witnesses as to the health of decedent under *Lamb* v. *Lamb*, 105 Ind. 456.

From the facts as set out herein, it is manifest that Andrews regarded himself as a member of the second class, and acquiesced in the rejection of his application for membership in the fourth class. The supreme lodge was justi-

fied in putting that construction upon his action.    For nine years he did not avail himself of the remedy granted him by the laws of the order—of appealing to the supreme lodge—nor did he appeal to the civil courts.    Much stress is placed by appellees upon *Sourwine* v. *Supreme Lodge, etc., supra.*    In that case a member in good standing of the first and second classes of the order requested to be transferred to the fourth class, and was arbitrarily refused admission into such class.    Upon the death of the insured, in an action by the beneficiaries, the court held that equity would regard that as done which ought to have been done, and the appellant was entitled to the rights of membership, although not recognized by the officers; that equity would grant relief although the insured never, in his lifetime, compelled the transfer by mandate as he might have done; that, having complied with the rules of the insurer, he could not have been deemed to have acquiesced in the officer's wrongful conduct.    In the case cited the applicant was rejected arbitrarily, when the medical examination showed him to be in perfect mental and physical condition, solely because of his age, which, by the express letter of the society's law, was not a reason for rejection.    In that case the insured died within sixteen months after rejection of his application.

Upon the proposition of acquiescence, time is a factor to be taken into account.    An inference not warranted upon a failure to assert a right within sixteen months may be drawn when the party has remained inactive for nine years, without any reason shown for the delay, and by his conduct has permitted, if not induced the association to believe that he was satisfied with the result reached.

Judgment reversed, with instruction to sustain appellant's motion for a new trial.