IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1906,
IN THE NINETIETH AND NINETY-FIRST
YEARS OF THE STATE.

---

SUPREME LODGE KNIGHTS OF PYTHIAS *v.* ANDREWS
ET AL.

[No. 5,407. Filed March 30, 1906. Rehearing denied June 28,
1906. Transfer denied October 26, 1906.]

1. APPEAL.—*Law of the Case.*—Questions decided upon a former appeal are not available for a second assignment of errors. p. 2.

2. SAME.—*Weighing Evidence.*—The decision of the trial court upon controverted questions of fact is conclusive on appeal. p. 2.

3. INSURANCE. — *Mutual Benefit.* — *Applications.*—*Rejection.*— *Causes.*—The rejection of an application for mutual benefit insurance because of the applicant's age, is not binding upon the applicant, where the medical examiner of such association had no right to reject for such reason. p. 3.

4. SAME.—*Mutual Benefit.*—*Applications.*—*Rejection.*—*Right of.* —*Upon What Depends.*—Where a beneficial association gives its applicants certain beneficial rights upon a certain showing upon a medical examination, the right of an applicant depends not upon the motives of the supreme medical examiner in passing upon such showing, but upon the facts shown upon such examination. p. 3.

5. SAME.—*Mutual Benefit.*—*Applications.*—*Rejection.*—*Mandamus.*—Where an improper rejection was made of an application, by a mutual benefit association, and the applicant placed in the proper treasurer's hands the dues payable by virtue of such application, such applicant is not compelled to mandate the officers of such association to accept such application, but he becomes a beneficial member regardless of such wrongful rejection. p. 3.

6. INSURANCE.—*Mutual Benefit.*—*Appplications.*—*Rejection.*—*Acquiescence.* — *Facts.* — *Inferences.* — *Appeal.* — Acquiescence in the rejection of an application for membership in a beneficial association is a question of fact; and inferences thereof from mere lapse of time are inferences of fact not open to review on appeal. p. 3.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Peter Andrews and others against the Supreme Lodge Knights of Pythias. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*Charles S. Hardy, George A. Knight, S. M. Ralston* and *B. F. Ratcliff,* for appellant.

*A. W. Knight* and *Coffey & McGregor,* for appellees.

ROBY, C. J.—A judgment for appellees herein was heretofore reversed by this court. *Supreme Lodge, etc.,* v. *Andrews* (1903), 31 Ind. App. 422. The cause 1. was retried without any change in the issues, a statement of which is contained in the opinion therein. The assignment of errors based upon the action of the court in ruling upon demurrers to the pleadings, is not now available., the same questions having been considered and held adversely to appellant upon the prior appeal. *Keller* v. *Gaskill* (1898), 20 Ind. App. 502.

The assignment based upon the action of the trial court in overruling appellant's motion for a new trial, presents again the sufficiency of the evidence to sustain the finding.

A material averment of the complaint was to the effect that the application by Mr. Andrews for transfer from the second to the fourth class was arbitrarily rejected 2. without just cause. The rejection of such application was placed by appellant, through its medical examiner-in-chief, upon the sole ground that the pulse rate of the applicant was excessive. In the absence of evidence controverting this conclusion, we held that the rejection was not shown to have been arbitrary. As the evidence now stands there is not only some evidence tending to show

that the pulse rate named was not necessarily inconsistent with the good health of a man of the applicant's age, but the larger volume of evidence upon that point is to that effect; while it is shown very clearly that the applicant was at the time in good health, and so remained until his death, which was caused by injuries received by falling from a building. The finding of the court is against appellant upon this issue of fact and is conclusive.

There is evidence from which it might be inferred that age, rather than excessive pulse, was the actual cause of the rejection, which is not an adequate reason for

3. such rejection. *Supreme Lodge, etc.*, v. *Andrews, supra; Sourwine* v. *Supreme Lodge, etc.* (1895), 12 Ind. App. 447, 54 Am. St. 532.

The motives impelling the medical examiner are not, however, material, the right to transfer depending upon the facts existing and not upon the examiner's

4. motive or opinion. *Supreme Council, etc.*, v. *Forsinger* (1890), 125 Ind. 52, 9 L. R. A. 501, 21 Am. St. 196.

There is also evidence negativing acquiescence by Mr. Andrews in the rejection of his application for transfer, as it appears that he kept money in the hands of

5. appellant's officer, to whom assessments were payable, sufficient to meet assessments against him upon the increased basis, and directed that such money be applied to their payment. It was not necessary to a preservation of his right that he institute mandamus proceeding to compel recognition of it. *Jackson* v. *Northwestern, etc., Assn.* (1891), 78 Wis. 463, 47 N. W. 733.

Whether he acquiesced in the action taken upon his application was also a question of fact, and inferences which may be drawn from the lapse of time are inferences

6. of fact not now open to review. Exception was taken to the introduction of various items of evi-

dence, the admissibility of which is sufficiently shown by what has been said.

Judgment affirmed.

Black, P. J., did not participate.

## DISSENTING OPINION.

COMSTOCK, J.—This is the second appeal of this cause; the first and second trials in the lower court were upon the same pleadings which are set out in the report of the first appeal. *Supreme Lodge, etc., v. Andrews* (1903), 31 Ind. App. 422. The complaint avers that Querner, the medical examiner-in-chief, arbitrarily, and without any valid excuse or cause, disapproved the examination, and peremptorily rejected the application of the deceased, because of the advanced age of said Andrews, and for no other reason or excuse. The constitution and by-laws require the applicant to be examined in certain ways to be recommended by the medical examiner and approved by the medical examiner-in-chief. The evidence shows that the decedent had been examined by the medical examiner, Dr. Silas D. Black, and the examination duly forwarded to the medical examiner-in-chief, recommending the acceptance of the risk by the endowment rank. In the questions and answers the pulse rate was given by said Black as seventy-six when sitting and eighty when standing. The application was disapproved April 2, 1889, by the medical examiner-in-chief, for the reason as indorsed thereon: "Excessive pulse rate for age." His age was sixty-two years. Doctor Querner, the medical examiner-in-chief, and a man fifty-eight years old, who had been medical examiner-in-chief for eight years or more, testified that he made the written indorsement of rejection on the application, and that "at that age [sixty-two years], with the pulse rate that this man had [seventy-six sitting], and the simple exercise of rising and standing bringing it up to eighty, was indicative to me that there was danger of future Bright's disease or paraly-

sis." The witness further testified that the pulse rate should have been, according to tables, about seventy or seventy-two when sitting, and when standing, four or five beats above, but that it should not increase that much on rising, though after walking a little while it might be the case. The witness had never seen Mr. Andrews, had no personal acquaintance with him, had no feeling upon the subject of his becoming a member of the fourth class, and used his judgment in the case, limiting himself to the questions and answers on the face of the report.

Doctor George McConnell, medical examiner-in-chief of the Supreme Lodge Knights of Pythias for three years, with twelve years' experience in practicing medicine, upon being shown the application of John A. Andrews, on which the statement is made by the local medical examiner of the pulse rate (seventy-six when sitting and eighty when standing), said that in his opinion the normal pulse rate of a man sixty-two years of age should be seventy-two sitting and seventy-five standing, and that the pulse rate of Mr. Andrews was above the average. Upon the first trial Doctor Gifford testified that he had known the decedent for thirty or forty years, but gave no testimony as to his condition prior to his last sickness. Doctor Black testified from the examination made of the decedent, answering in the plural to his physical and mental condition: "They were good, sound, and healthy."

Doctor J. D. Sourwine testified that he knew the insured, but had never treated him; that he had the appearance of being a healthy man for his age.

The other witnesses in behalf of the appellees were non-experts.

Upon the second trial Doctor Black testified that the normal pulse rate of a man sixty-two years of age, sitting and standing, was anywhere from seventy to eighty; that a pulse rate of a man sixty-two years of age, seventy-six sitting and eighty standing indicated good health, and that

at the time of his application decedent's health was good. Doctor Gifford testified that he considered a regular pulse rate of seventy-six sitting and eighty standing, of a man sixty-two years of age, was a fair pulse, and so far as heart trouble would be concerned he would consider that he had a good heart, but could not tell what other troubles might arise from pulsation. Doctor L. S. Hart testified that the normal pulse rate of a man sixty-two years old, in average good health, would be about seventy—anywhere from seventy to seventy-five; it might be about eighty standing; that he could not find anything indicating danger in a pulse rate of seventy-six sitting and eighty standing, in a man sixty-two years of age; that is, in the pulse rate alone, and that judging from such pulse rate alone he would say that the subject was in good health.

Doctor Black, upon being recalled, testified. that the pulse was full and regular, and that the deceased complained of no organic trouble or illness of any character, and that he observed none.

Doctor F. C. Dilley's testimony was that the pulse rate of a man sixty-two years of age is about seventy to seventy-five sitting, and eighty standing; that a difference of four points in the pulse rates between sitting and standing is about normal, and that such a rate in a man of the decedent's age would indicate good health.

The complaint charges that the application was rejected solely because of the advanced age of the applicant, arbitrarily and without a legitimate excuse. A different reason is indorsed upon the application, and is testified to by the medical examiner-in-chief. The substance of his testimony is that the pulse rate reported by the medical examiner indicated danger of paralysis or Bright's disease, though neither disease was then active, and that, in the discharge of his duty to the order, he rejected the application for that reason. His testimony is corroborated by that of Doctor McConnell, another examiner-in-chief of large ex-

perience.　While there is some conflict in the testimony as to the normal pulse rate, there is no contradiction of the testimony of Doctor Querner as to the indications of the particular diseases named by him.

It is not for the court to say, in the absence of fraud or mistake, that the medical examiner-in-chief acted arbitrarily because his opinion is not in harmony with that of other reputable physicians, as to the normal pulse rate of a man of certain age.　The proof submitted to the examiner-in-chief, and not that at the trial, gives character to the rejection or acceptance of the application.　It is the office, under the laws of the order, of the medical examiner-in-chief to accept or reject applications upon the facts reported to him upon the prescribed form by the medical examiner.　Necessarily he must be guided by his judgment, based upon his experience and knowledge gained from a study of the authorities.　The order, whose servant he is, may set aside or disregard his ruling, but the courts cannot, except upon a showing of a mistake in the report of facts upon which he acted, or that he has acted arbitrarily, or with caprice, or that his decision was influenced by dishonest motives.　The evidence in this case fails to show any one of these reasons.　I therefore dissent from the majority opinion.

The judgment should be reversed.

## On Petition for Rehearing.

Comstock, P. J.—The petition for a rehearing in this cause emphasizes the proposition that where a voluntary society proceeds regularly in accordance with its own rules, they not being contrary to public policy and the laws of the land, and its procedure not being *malafides,* such rules and proceedings cannot be abrogated by a policy holder or set aside by the courts.　*Croak* v. *High Court, etc.* (1896), 162 Ill. 298, 44 N. E. 525.　This doctrine is ignored in the original, prevailing opinion.

Mr. Andrews, as a member of the appellant society, had a right to transfer to a membership of the fourth class, limited by the rules and laws of the order. His right was qualified. It depended upon the approval of his application by the medical examiner-in-chief. As a member of this mutual benevolent society, he approved and assented to the qualification. For many months, he had a right, unqualified, to be transferred from the second to the fourth class free of charge and regardless of age. During that time he did not file his application for a transfer and a change in the laws placed a restriction upon this right, which appellees ask shall be removed. The writer is of the opinion that the courts have no right to prescribe rules for the government of a society, in opposition to its own laws. The right of the applicant to transfer depended upon more than his application. The application required the approval of the medical examiner-in-chief. It did not receive this approval for reasons stated, both by indorsement on the application and the oral testimony of the medical examiner. The right to membership is determined by the laws of the order; the right and manner of change from one class to another is determined by the same laws and rules. The rules do not say that the applicant shall be transferred upon the approval of the local medical examiner, nor that the opinion of the medical examiner shall be set aside by the opinion of other medical men, although they may be of equal learning and experience, but only upon the conditions to which, as a member of the order, he has subscribed.

The complaint charges that the application was rejected solely because of the advanced age of the applicant, arbitrarily and without legitimate excuse. If the testimony of the medical examiner-in-chief or of Doctor McConnell, another medical examiner, are to be given any weight, these grounds are not only not sustained by any evidence, but are positively disproved. Their testimony is uncontradicted

as to physical infirmities that are indicated by and are likely to follow a certain pulse rate at a certain age, conditions shown to have existed in the applicant, and directly rebutting the charge made in the complaint. The conclusion reached in the prevailing opinion ignores the rules of the order.

The petition for a rehearing should be granted, and the judgment of the trial court reversed.