Holm vs. Colman.

Holm, Respondent, vs. Colman, imp., Appellant

*December 20, 1894 — January 8, 1895.*

(1) *Change of venue: Defendants having different residence.* (2) *Contracts: Construction: Court and jury.*

1. One of two defendants cannot insist upon a change of venue to the county of his residence against the wish of his codefendant, in whose county the action was brought, if the latter is not in collusion with the plaintiff.
2. The question whether a contract for the sale of logs to be cut upon certain lands was a separate and independent contract or a modification or enlargement of the provisions of a contract in respect to other logs, is *held* to have been a question of fact for the jury, where, although the later contract was made by written correspondence, one of the letters had been lost and its contents were not very definitely proved, and much of the details of the contract had been left to implication or inference.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

About October 1, 1891, the defendant Mills was desirous of purchasing certain pine standing on lands described in township 39, belonging to Cornell University, but had not the money to do so. Accordingly he applied to the defendant *Colman* to advance the money and purchase the lands in his (*Colman's*) name and allow Mills to get off the timber and sell the same to *Colman*, he getting his pay out of the logs so delivered. Accordingly, October 1, 1891, *Colman* entered into a contract with Cornell University, whereby, in effect, the university agreed to sell and convey to *Colman* as much of the marketable pine timber as he might remove from said lands in township 39, described, during the seasons of 1891–92 and 1892–93, standing or growing or being thereon, and in consideration thereof the said *Colman* agreed to pay to said Cornell University for said timber the sum of $23,784, as follows: $5,784 cash down, and $18,000 April

1, 1892, with interest annually on all sums unpaid from October 1, 1891, at the rate of seven per cent., as per notes of even date.

On October 27, 1891, said Mills and said *Colman* entered into a written contract, wherein Mills agreed, during the logging season of 1891–92, to cut, haul, and put into the Flambeau river, in the county of Price, 4,500,000 feet, more or less, of good, sound, smooth, straight, white-pine saw logs, to be cut from first choppings from the timber on the lands of said Mills described, in township 39; and that said *Colman* should pay said Mills for all such logs afloat in said river, averaging not more than five logs to the thousand feet, board measure, $9 per thousand feet, to be graded to size only; and for all second-grade logs which should be put in and afloat in said river, averaging not more than eight logs to the thousand feet, $5.50 per thousand feet, to be paid in the manner following: $1.50 per thousand feet each month, as the logs should be banked, properly certified by the scaler, and $1.50 per thousand feet when the camps should break up in the spring, for men's wages; the balance, one half July 15, 1892, and the other half October 15, 1892. Said *Colman* having purchased said timber at a cost of $23,784, he was therein authorized to retain a sufficient amount out of the above payments to cover said purchase price and interest at seven per cent., and to secure himself against any loss on said timber purchase.

About December 4, 1891, Mills bought 200,000 feet of other timber on lands described in township 42, and thereupon wrote *Colman's* agent, asking what *Colman* would pay for the same delivered in the West Fork of the Chippewa river. *Colman's* agent thereupon answered, offering $9.25 for the first grade, averaging four logs to the thousand feet, and $5.25 for all other logs. On December 19, 1891, Mills wrote *Colman's* agent to the effect that he would sell his logs to *Colman* at his offer, and would commence to bank,

Monday, December 21st. By some inadvertence said letter was not sent, and was, in effect, repeated December 25, 1891, and stating that the failure to send the letter would make no difference, as they were using *Colman's* mark on the logs. On March 18, 1892, Mills assigned, transferred, and set over to the plaintiff the said standing and cut timber on said lands described in township 42, and all his right, title, and interest therein, together with all moneys due and to become due on said contract with said *Colman*, as collateral security for the payment of $1,785.43 owing by said Mills to this plaintiff. On March 23, 1892, the plaintiff notified said *Colman* of such assignment. On June 30, 1893, Mills executed and delivered to the plaintiff a written contract, to the effect that, in consideration of $1 to him in hand paid, he thereby guarantied the payment by said *Colman* to the plaintiff herein of all moneys due and owing by said *Colman* as the purchase price of the timber described in the contract between *Colman* and Mills, for the logs to be cut from the lands described in township 42, and all of the moneys agreed by said *Colman* to be paid to said Mills therefor.

This action was commenced by the service of a summons and complaint on said *Colman*, July 6, 1893, and on said Mills, July 26, 1893, for the recovery of the amount of $1,410.29, with interest thereon from April 1, 1892, alleged to be due to the plaintiff from *Colman* on said last-mentioned contract and on said guaranty. Mills made no answer, and let the cause go by default against him. On July 26, 1893, *Colman* appeared separately by his attorneys in said action, and demanded that the venue thereof be changed to La Crosse county, where he, the said *Colman*, resided. The plaintiff having failed to consent to such change, said *Colman* applied to the court for the same, but such application was denied September 20, 1893. *Colman* answered setting up the contract of October 27, 1891; that the contract for the logs on the lands described in township 42 was a part or modifica-

tion of the same contract; and that upon the two contracts together he (*Colman*) was not at the time of such assignment, March 18, 1892, indebted to Mills in any sum whatever, but that Mills was then indebted to him in a large amount.

At the close of the trial of said issue the jury returned a verdict in favor of the plaintiff and against both defendants, and assessed the plaintiff's damages at the sum of $1,383.55. From the judgment entered thereon the defendant *Colman* appeals.

For the appellant there were briefs by *W. H. Stafford*, attorney, and *T. F. Frawley* and *Losey & Woodward*, of counsel, and oral argument by *Mr. Stafford* and *Mr. Frawley*. They contended, *inter alia*, that Mills's guarantee of payment of the assigned claim was made for the purpose of making him a defendant, and thus preventing plaintiff from obtaining a change of venue to La Crosse county, and was a fraud upon the statute, upon the court, and upon the appellant. Mills to all intents and purposes was and has been a plaintiff in the action, and his interests are and all the time have been hostile to the interests of the appellant. The trial of the action should, therefore, have been had in La Crosse county. *Wolcott v. Wolcott*, 32 Wis. 63, 68; *Eldred v. Becker*, 60 id. 48; *Rupp v. Swineford*, 40 id. 28, 31; sec. 2621, R. S.; *Hewett v. Follett*, 51 Wis. 264, 274; *Meiners v. Loeb*, 64 id. 343; *Smith v. Loomis*, 72 Me. 51. The right of removal or change of venue cannot be defeated by plaintiff by joining as a defendant a person merely for the purpose of defeating the real defendant's right of removal. *Arapahoe Co. v. K. P. R. Co.* 4 Dill. 277; *Walden v. Skinner*, 101 U. S. 577; *Plymouth G. M. Co. v. Amador & S. C. Co.* 118 U. S. 264; *Dow v. Bradstreet & Co.* 46 Fed. Rep. 824; *Arrowsmith v. N. & D. R. Co.* 57 Fed. Rep. 165. When a contract is made between parties at a distance from each other, by means of letters from each to the other, it is the province of the court to examine the correspondence and construe the contract, and it

---

Holm vs. Colman.

---

is error to submit to the jury the question what the contract
so entered into was. *Ranney v. Higby*, 5 Wis. 62; *Mowry
v. Wood*, 12 id. 413; *Diefenback v. Stark*, 56 id. 462; *Van
Valkenberg v. Rogers*, 18 Mich. 180; *Chandler & Co. v. Knott*,
86 Iowa, 113; *Lawrence v. M., L. S. & W. R. Co.* 84 Wis. 427.
When the terms and language of a contract are ascertained,
its meaning and intent present questions of law only, and it
is the duty of the court to determine and declare what that
is. *Dwight v. Germania L. Ins. Co.* 103 N. Y. 341; *Home
Ins. Co. v. Roe*, 71 Wis. 40; *Farnsworth v. Brunquest*, 36 id.
202; *March v. Allabough*, 103 Pa. St. 335; *Emery v. Owings*,
6 Gill, 191; *Barton v. Grey*, 57 Mich. 622; *Bank of Mon-
treal v. Recknagel*, 109 N. Y. 482, 490; *Simms v. Sumner*, 58
N. W. Rep. 431.

For the respondent there was a brief by *Wickham & Farr*,
and oral argument by *James Wickham*.

CASSODAY, J. We perceive no error in refusing to change
the venue. The defendant *Colman* resided in La Crosse, and
the defendant Mills in Eau Claire, where the action was
brought. If the plaintiff was entitled to recover against
*Colman* upon the cause of action alleged in his complaint,
then he was also entitled to recover for the same amount
against Mills upon his guaranty of the payment of the same
indebtedness. They were both severally liable for the same
demand, although upon different instruments, and hence
could both be included as defendants in the same action, at
the option of the plaintiff. Sec. 2609, R. S. The action
could not be brought in both counties. The plaintiff neces-
sarily had the option of bringing it in either county. *Ibid.*
The defendant *Colman* was in no position to insist upon a
change of venue not desired by his codefendant. *Zeller v.
Martin*, 84 Wis. 4. We do not think the charge of fraud
and collusion between the plaintiff and Mills has been sus-
tained.

There was no error in submitting to the jury for determination the question whether the contract between Mills and Colman for the sale and delivery of the logs to be cut from the lands described in township 42, and upon which this action is brought, was separate and independent of the contract between them, made two months previously, respecting the sale and delivery of logs to be cut from the lands described in township 39. True, the contract for the logs to be cut from the lands in township 42 was wholly or in part in writing, consisting of correspondence between Mills and Colman's agent; but one of the letters had been lost, and its contents were not very definitely proved, and much of the details of that contract had been left to implication or inference, and so it became a proper question of fact for the jury. The verdict to the effect that it was a separate and independent contract is certainly supported by the evidence. Even if we were to regard that contract as sufficiently explicit to call for a construction, as a matter of law, by the court, still we are inclined to think that the court might properly have reached the same conclusion that the jury manifestly did. The court charged the jury to the effect that the evidence was conclusive that if the last contract was a mere modification or enlargement of the first, so that the two should be taken and considered together as an entire contract, then, at the time of the assignment from Mills to the plaintiff, Mills was indebted to Colman more than the amount of the plaintiff's claim, and in that event their verdict should be in favor of the defendant Colman; but that, if they found that the two contracts were separate and independent of each other, then, as agreed between the parties, there was, at the time of the assignment, due Mills from Colman, on the last contract, $1,333.85, and in that event their verdict should be in favor of the plaintiff for that amount. We perceive no error in the charge.

It follows from what has been said that there was no

error in refusing a nonsuit, nor in refusing to direct a verdict or render a judgment in favor of the defendant *Colman.*

Numerous errors are assigned to the admission of testimony. Much of it relates to conversations between the plaintiff and *Colman's* agent, with whom Mills made both contracts, and who made payments to Mills and at least one payment to the plaintiff after the assignment. We find no error in admitting such testimony. Nor do we think there was any error in excluding testimony as to the extent of such agent's authority, as it was not involved in the case; and besides, the witness had already testified in regard to it. There are other exceptions to the admission and rejection of testimony which do not seem to be of sufficient importance to call for special consideration.

*By the Court.*— The judgment of the circuit court is affirmed.