[Civ. No. 676.   Third Appellate District.—April 19, 1910.]

D. J. SIMMONS, Appellant, v. MARY SWEENEY, Respondent.

ACTION BY BROKER—BREACH OF WRITTEN CONTRACT OF SALE—FINDING —SUBSTITUTION OF ORAL CONTRACT—SALE AT AUCTION NOT EFFECTED.—In an action by a real estate broker to recover damages for breach of a written contract to pay one-third of all profit from a sale of land at $19,000 for which $16,250 had been paid, on account of prevention by the owner of an auction sale for $20,400, a recovery cannot be had, where the court finds upon sufficient evidence that the written contract was superseded by the oral contract of the parties for a sale of the land at auction by the broker at his own expense, at which the owner was to receive $21,000, and the broker was to receive all above that sum, which might prove more profitable to him, it being expressly agreed that if $21,000 was not realized, all sales were to be declared off, which was done, with the effect that no purchaser was obtained or sale effected.

ID.—RESCISSION—NOVATION.—The evidence sustains a rescission of the written agreement, and the substitution of the parol contract; or, in other words, it shows a clear case of novation, which, under section 1530 of the Civil Code, is "the substitution of a new obligation for an existing one."

ID.—CONSTRUCTION OF EVIDENCE UNDER FINDING—QUESTION OF FACT FOR TRIAL COURT.—Under the construction that this court is bound to place upon the evidence, it is incontrovertible that, after the execution of the written contract, and before any services were performed under its terms, the parties thereto entered into an entirely different parol agreement respecting the same subject matter; and it is a question of fact for the trial court to determine from all the facts and circumstances whether the parol agreement was in-

tended to be substituted for the written agreement, and whether the subsequent conduct in attempting to sell the property is referable to the parol agreement.

ID.—INCONSISTENCY OF TERMS OF CONTRACTS—ANNULMENT OF WRITTEN CONTRACT—LOSS OF COMPENSATION.—The terms of the two contracts were entirely inconsistent, and could not be operative at the same time. It is reasonable to conclude that the written contract was annulled by consent, and that, since appellant failed to sell the property for the agreed sum, he was entitled to no compensation.

ID.—ELECTION BY APPELLANT—LOSS OF RIGHTS AND OBLIGATIONS UNDER WRITTEN CONTRACT.—If appellant intended to rely upon the written contract, he should have declined to accept and act upon the proposition subsequently submitted to him by respondent. He was called upon to exercise his election, and he chose to take his chances of a larger compensation under the second parol arrangement; and by accepting respondent's new proposal and subsequently acting thereon, the rescission of the first contract was entirely consummated, and it was then too late for him to seek a revival of the privileges and obligations of the written contract.

ID.—FREEDOM OF CHOICE—ABSENCE OF MENACE OR DURESS.—There was no interference with the freedom of the appellant's choice by the statement that in the proposed auction sale, respondent must have $21,000 as her share, or there would be no sale; such a declaration did not amount to menace or duress, where nothing else appears calculated to inspire fear in the mind of appellant or to influence unduly his judgment. The mere threat to withhold from a party a legal right which he has an adequate remedy to enforce is not, in the eyes of the law, duress.

ID.—CONSIDERATION OF NEW AGREEMENT—MISTAKE OF JUDGMENT.—The new agreement was supported by a sufficient consideration in the right given to appellant to retain whatever was received for the property in excess of $21,000, by which it was believed that he would be amply compensated. The fact that subsequent events proved the parties to be mistaken in their judgment does not affect the question of compensation.

ID.—PAROL AGREEMENT NOT WITHIN STATUTE OF FRAUDS.—The parol agreement, having become entirely executed, was not within the statute of frauds, as purporting to transfer an interest in real property. Under section 1661 of the Civil Code, "an executed contract is one the object of which was fully performed."

ID.—SUPPOSITION OF INVALIDITY OF PAROL AGREEMENT—PURCHASER NOT FOUND UNDER WRITTEN AGREEMENT.—Upon the supposition of the invalidity of the parol agreement, and the continuance of the written agreement in force, there can be no recovery thereunder, for the reason that the broker has failed to prove that he obtained a

purchaser for the property, ready and willing to make the purchase in accordance with the terms imposed by the seller.

ID.—DUTY OF BROKER NOT PERFORMED — DISMISSAL OF PROSPECTIVE BUYER.—It cannot be said that the duty of the broker has been performed, when, by his own act, he has dismissed the prospective buyer and acquitted him of any connection with the transaction and of any obligation to purchase.

APPEAL from an order of the Superior Court of Sacramento County, denying a new trial. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

B. F. Howard, and J. R. Hughes, for Appellant.

J. B. Devine, and J. W. S. Butler, for Respondent.

THE COURT.—The action is for damages for the violation of a contract. In December, 1906, appellant procured from one Henderson an option on lots 5, 6, and east half of lot 7, bounded by M and N and Sixteenth and Seventeenth streets, in the city of Sacramento, for the sum of $16,000. Shortly afterward appellant entered into an agreement with respondent whereby she was to purchase the property for $16,250 and give him one-third of the profits above $16,250 when the property could be sold for as much as $19,000. Accordingly appellant procured Henderson to deed the property to respondent for said consideration, $250 of the amount being paid to Simmons.

In the spring of 1907 the parties herein reduced their agreement to writing, as follows: "Lots 5, 6 and east half of lot 7, M and N, 16th and 17th streets. Price paid $16,250, selling price $19,600. Mrs. Sweeney to receive ⅔ of the profit; D. J. Simmons to receive ⅓ of the profit. Signed, D. J. Simmons; Mary Sweeney." Appellant claims that "It is for the violation of said contract by respondent in preventing a sale of said property for $20,400 at an auction sale had April 23, 1908, and refusing to stand by the terms thereof and divide the profits, as provided in said contract, that damages are sought in this action."

The court found that said written agreement was executed by appellant and respondent, and further that in "April,

1908, it was mutually agreed between the plaintiff and defendant that the plaintiff, who is an auctioneer, should advertise and sell said property at public sale, and that said property should not be sold at said sale for less than $21,000, and that if the bids for said property offered at said sale should not aggregate said sum of $21,000 said property should not be sold and should be withdrawn from sale, and that the plaintiff (defendant?) should have and receive as her portion of the purchase price of said property at said sale the sum of $21,000, and not less, and that defendant (plaintiff?) should receive all sums for which said property should be sold at said sale in excess of said sum of $21,000.'' It is further found that in pursuance of said agreement plaintiff advertised the sale to take place on Thursday, April 23, 1908, at 10 o'clock A. M.; that on said date he, ''in the presence of the defendant and in the presence of various persons who were assembled at said sale, stated to the persons present at said sale that he would offer the said property in subdivisions and would receive bids upon said subdivisions so offered, and that after having offered all of said property in subdivisions for sale he would then offer the property as a whole for sale and receive bids thereon, and that in the event the bids offered for said property, either in subdivisions or as a whole, did not aggregate the sum of $21,000, that the sale of the property as a whole or in subdivisions would be declared off and that said property would be withdrawn from sale''; that the property was thereupon offered for sale and that certain bids were received for the subdivisions, aggregating less than $21,000. ''That the said plaintiff, after he had received said bids as aforesaid, for said property in subdivisions, thereupon announced that he would offer the property for sale as a whole, and he thereupon did offer said property as a whole for sale, but received no bids therefor. Thereupon the said plaintiff, in the presence of defendant, and in the presence of said bidders aforesaid and the bystanders at said sale, declared that inasmuch as the bids offered for said property did not aggregate the sum of $21,000, that the said sale and the said sales of said subdivisions was and were off, and that the said property was withdrawn from sale, and the said bids or offers were, and each of them was, rejected.''

There is a finding, also, that none of said bidders made any tender to defendant or demanded a deed or renewed his bid or offer to buy said property or any of the subdivisions thereof.

The evidence is abundantly sufficient to support the finding that this parol agreement was made and that plaintiff conducted said auction in accordance with its terms. The testimony of the plaintiff himself is to that effect. He testified that "At that meeting Mrs. Sweeney said she wanted twenty-one thousand dollars for her interest in the property. I said this, that I would go on and advertise it, pay all the expenses out of my pocket, and would endeavor to get—she said the property ought to bring twenty-five thousand dollars, and she says 'if it brings enough to cover my interest and my expense'—I told her I did not think it would bring that much, but that it would bring twenty-two thousand five hundred, and she told me that at that time she wanted twenty-one thousand, and she said at that time that all I got over twenty-one thousand I could have. I advertised the property and said I would try and see. If the property brought twenty-two thousand five hundred I was to get fifteen hundred. If it brought twenty-five thousand I was to get four thousand. If the property did not bring twenty-one thousand, the sale was not to go and the sale was to be declared off; that was the distinct understanding. The day of the sale I cried the property in the usual way, offering the land in parcels. Before the sale I told the bidders I was going to subdivide it and offer it in parcels or pieces, as I described them how I was going to offer them, and told them that the highest and best bidder would get them, provided that it brought a certain amount; I said this very clearly. I do not think I told them how much it was to bring. I might have said that it must bring twenty-one thousand, but I don't recollect. I then told the various bidders on the subdivisions or several parcels I would offer the piece of property as a whole, and that if it did not bring the sum required by Mrs. Sweeney that the sale would be off. I thereupon cried the parcels and obtained certain bids on them. At the conclusion of the sale, so far as the sale of the subdivisions was concerned, I offered it as a whole, stating that the property did not bring

the price Mrs. Sweeney wanted. I received no bids upon the property as a whole and I thereupon declared the sale off."

The terms of the agreement are recited in substantially the same way by respondent. She adds the statement that appellant declared he would take the responsibility on his own shoulders and pay the expenses of the auction sale and Mrs. Sweeney was to get $21,000.

There is thus shown a rescission of the written agreement and the substitution of the parol contract. In other words, we have the clear case of a novation, "the substitution of a new obligation for an existing one." (Civ. Code, sec. 1530.) Under the construction we are bound to place upon the evidence there can be no controversy that after the execution of said written agreement, and before any services were performed under its terms, the parties thereto entered into another and entirely different agreement concerning the same subject matter. The only possible question that could arise would be whether this was intended to be substituted for the written agreement and whether the subsequent conduct of appellant in attempting to sell the property is referable to said parol agreement. This was for the court to determine from all the facts and circumstances. While there was no express declaration that the parol contract was to supersede the written one, no other conclusion seems reasonable. The terms of these two contracts were entirely inconsistent and could not be operative at the same time. But the evidence for respondent shows conclusively that everything done by appellant toward effecting a sale of the property was in pursuance of the said parol agreement. He followed its terms in advertising the property and announced to the bidders that their bids were rejected and the property withdrawn because it did not bring the said amount of $21,000. In fact, no one can read the evidence dispassionately without reaching the conclusion that the earlier agreement was entirely annulled by consent and, since appellant failed to sell the property for the sum agreed upon, he was entitled to no compensation.

If appellant intended to rely upon the first contract he should have declined to accept and act upon the proposition subsequently submitted by respondent. He was called upon to exercise his election and he chose to take his chances of getting a larger compensation under this second arrangement.

The rule approved by our supreme court in *Alderson* v. *Houston,* 154 Cal. 11, [96 Pac. 884], is stated as follows in *Lake Shore etc. Ry. Co.* v. *Richards,* 152 Ill. 59, [38 N. E. 773] : "Without further quotation from cases, it seems clear, both upon principle and by authority, that where one party to an executory contract refuses to treat it as substituting and binding upon him, or by his acts and conduct shows that he has renounced it and no longer considers himself bound by it, there is, in legal effect, a prevention of performance by the other party, and it can make no difference whether the contract has been partially performed or the time for performance has not yet arrived; nor is it important whether the renunciation be by declaration of the party that he will be no longer bound, or by acts and conduct which clearly evince that that determination had been reached and is being acted upon. It would seem clear on principle that a mere declaration of the party of an intention not to be bound, or acts and conduct in repudiation of the contract, will not of themselves amount to a breach, so as to create an *effectual* renunciation of the contract, for one party cannot by any act or declaration destroy the binding force and efficacy of the contract. As said by Bowen, L. J., in *Johnstone* v. *Milling,* 16 Q. B. Div. 460 : 'Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen* and holding fast to the contract to wait till the time for its performance has arrived, or to act upon it, and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. . . . If he does so elect, it becomes a breach of contract, and he can recover upon it as such.' Upon the election to treat the renunciation, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist, except for the purpose of maintaining the action for the recovery of damages. These views are amply sustained by numerous decided cases." It is difficult to conceive how any other position could be taken with any show of reason. In the case at bar, appellant not only failed to elect to stand upon the original contract and to regard the

13 Cal. App.—19

acts and declarations of respondent as a repudiation of its terms and entitling him to the commission provided therein, but he accepted respondent's new proposal, subsequently acted upon it, and thereby the rescission of the former contract was entirely consummated. It was then too late to seek a revival of the privileges and obligations of the written contract. They had disappeared as completely as though never existing.

The specific grounds upon which appellant attacks the second agreement and the conclusion of the trial court drawn therefrom are, as stated by him: "Said so-called agreement was invalid and of no binding force on the rights, duties and obligations of the parties, or either of them, as laid down in the said written agreement, in this: 1. It was not a mutual agreement within the meaning of the law. 2. There was no sufficient consideration to support it. 3. It was an oral agreement conveying an interest in real property. 4. It was an unexecuted oral agreement changing the terms of a written agreement."

None of these contentions can be successfully maintained. The want of mutuality is affirmed on the pretext that appellant was coerced by the assumption of authority on the part of respondent. He was confronted, so it is claimed, by the menacing declaration that respondent "must have $21,000 for her share or there would be no sale." But it is too plain for argument that there was no interference nor attempted interference with the freedom of appellant's choice. We are not aware of any authority holding that such a declaration amounts to menace or duress. The record does not disclose anything in the appearance or manner of respondent calculated to inspire fear in the mind of appellant or to influence unduly his judgment. "The mere threat to withhold from a party a legal right which he has an adequate remedy to enforce, is not, in the eyes of the law, duress. Certainly not such as will evade the execution of a contract." (*Cable* v. *Foley*, 45 Minn. 421, [47 N. W. 1135] ; *Taylor* v. *Ford*, 131 Cal. 440, [63 Pac. 770] ; *Standard Box Co.* v. *Mutual Biscuit Co.*, 10 Cal. App. 746, [103 Pac. 938].) We find nothing to indicate either legal or moral duress.

It is equally clear that there was a sufficient consideration to support the agreement. Appellant acquired the right to

retain whatever was received for the property in excess of
$21,000. It was believed that the property could be sold for
such an amount as would amply compensate appellant for his
services. That subsequent events proved the parties to be
mistaken in their judgment does not affect the question of con-
sideration.

If the property had been sold for a large amount in excess
of the sum to be paid respondent it would be equally as rea-
sonable to contend that there was no consideration for the
contract. The truth is, of course, that the opportunity for
benefit to both parties and the expectation of realizing it
growing out of the terms of the agreement are sufficient to
make it binding. If we were willing to concede the sound-
ness of appellant's position that the agreement in question
purported to convey an interest in real property it would
signify nothing, as it is manifest that it was entirely executed
and therefore taken without the statute of frauds. "An ex-
ecuted contract is one the object of which is fully performed."
(Civ. Code, sec. 1661.)

When it was found that the property would not bring
$21,000 there was nothing left for appellant but to declare
the bids rejected and the property withdrawn from sale.
This was done voluntarily by appellant and the contractual
relation terminated. It may be that he would have been au-
thorized to advertise the property again and repeat the effort
to sell, but that question is not involved, since appellant pur-
sued the matter no further, but treated the contract as at an
end and brought suit for his commission.

But, in addition to the foregoing, it must be said that if
the parol agreement was invalid appellant has not shown
himself entitled to recover under the written agreement.
Since he acquiesced in the new proposal the most that could
be claimed would be that the written contract is still opera-
tive. But as a basis for any commissions under this, appel-
lant must prove that he obtained a purchaser for the prop-
erty. "Before a broker can be said to have earned his
commission it must be shown that he provided a purchaser
who was ready and willing to make the purchase in accord-
ance with the terms imposed by the seller." (*Zeimer* v. *Anti-
sell*, 75 Cal. 509, [17. Pac. 642].) It cannot be said that this
duty has been performed when the agent by his own act has

dismissed the prospective buyer and acquitted him of any connection with the transaction and of any obligation to purchase.

There can be no doubt, we think, that the findings are supported by the evidence and that no error was committed by the lower court.

The order denying the motion for a new trial is affirmed.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 17, 1910.