[Civil No. 1315.   Filed October 2, 1913.]

[135 Pac. 715.]

## ALBERT W. FORBES, Appellant, v. ARIZONA-PARRAL MINING COMPANY, a Corporation, Appellee.

BROKERS—SALE OF REAL PROPERTY—CONTRACT—CONSTRUCTION.—Plaintiff, a broker, having applied to defendant for an option on certain property, defendant's president wrote declining to consider the proposition, or to entertain negotiations through third persons, but that plaintiff might put responsible parties into communication with defendant direct, with the understanding that defendant would not accept less than $250,000 for the property, and if "anyone" should buy as the direct result of an introduction by plaintiff, defendant would recognize plaintiff's intervention by a suitable commission on "any deal" that might be made. *Held*, that plaintiff's right to commissions on a sale did not depend on his introducing a purchaser who bought for not less than the price named, but that his right was complete on his introducing a responsible purchaser, to whom defendant sold the property at a reduced price.

[As to right of broker to commission where owner of property, accepts less than stipulated price, see note in Ann. Cas. 1913E, 784.]

APPEAL from a judgment of the Superior Court of the County of Pima.  W. F. Cooper, Judge.  Reversed.

### STATEMENT OF FACTS BY THE COURT.

Appellant sues for commission as a broker.  The contract of employment is in the form of a letter which is set out *in haec verba* in the complaint, and is in words and figures following:

"Arizona-Parral Mining Company.
"1012 Baltimore Avenue, Kansas City, Mo.
"Nov. 16, 1910.
"Mr. A. W. Forbes, P. O. Box No. 868, Tucson, Arizona.

"Dear Sir: I have your letter of November 11th, and in reply beg to say that this company cannot consider giving you a bond or option on the San Xavier property, and cannot entertain the putting of such negotiations through third parties.  If responsible parties really desire to take up the mat-

ter seriously, they can be put by you in communication with us direct, so that we may satisfy ourselves that they are thoroughly capable of carrying out any engagement they might enter into in connection with same, and unless such parties can give us ample assurance that the matter will be taken up seriously and actively, with a full recognition of the fact that the company would not accept less than $250,000.00 for the property, we do not care to spend time in negotiation on the subject. In the event that anyone should buy the property from us as the direct result of an introduction to the company by yourself, we should of course be glad to recognize your intervention by a suitable commission on any deal that might be made. If the parties you have in mind can fill the conditions above required, we shall be pleased to have you put them in direct communication with us. Otherwise we shall not pursue the matter further.

"Yours very truly,

"B. D. ROWE,

"President."

Appellant alleges in his complaint that he fully performed all of the conditions of the contract by presenting the property of appellee to the Empire Zinc Company, and that as a direct result thereof the Empire Zinc Company, on the eleventh day of November, 1912, purchased the appellee's property, paying therefor $175,000. He alleges that the reasonable value of the introduction by and services of himself is the sum of $17,500. Appellee's answer denied generally the allegations of the complaint. On the trial when appellant offered the letter set out in the complaint as evidence of his contract, the appellee objected to it on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The objection was sustained, and the appellant, standing on his complaint, refused to amend, whereupon judgment was entered that the appellant recover nothing, and that defendant have its costs. From this judgment and the order overruling motion for a new trial, this appeal is taken.

Mr. Eugene S. Ives, for Appellant.

Mr. S. L. Kingan and Messrs. Ashley & Gilbert, for Appellee.

ROSS, J.—The appellee's contention is that appellant's engagement required him to introduce a purchaser of the property for not less than $250,000 to entitle him to any commission, and that, inasmuch as the property was sold for only $175,000, the ruling of the court, rejecting the evidence offered, and the judgment entered should be sustained. The appellant's construction of his engagement is that he had discharged his obligation when he brought the parties together, and that his commissions were due upon the consummation of the sale upon terms satisfactory to appellee. The question is one of construction of the contract as evidenced by the letter of November 16, 1910. Bearing in mind, as is stated in 9 Cyc. 577, that "the first and main rule of construction is that the intent of the parties as expressed in the words they have used must govern," let us search the language of this contract and ascertain therefrom, if we can, whether the parties had a common understanding, and, if so, what that understanding was from the language used.

The first sentence of the letter is: "I have your letter of November 11th, and in reply beg to say that this company cannot consider giving you a bond or option on the San Xavier property, and cannot entertain the putting of such negotiations through third parties." The natural and unavoidable inference is, from this language, that the company was willing to sell its property, but reserved to itself the right to negotiate the sale. It refused to bond or option the property to third parties, including appellant, and refused to entertain the putting of such negotiations through third parties. The company refused to deal with prospective purchasers on options or bonds unless the negotiations were carried on by itself.

The next sentence of the letter authorizes appellant to put the company in direct communication with responsible parties seriously desiring to buy property, and if the company became satisfied that such parties were thoroughly capable of carrying out any engagement they might enter into, and was amply assured that the prospective buyers would take the matter up seriously and actively, with the full recognition of the fact that the company would not accept less than $250,000, negotiations for the sale would be taken up, otherwise not. Here the appellant's authority is limited to introducing responsible

parties, the company reserving the right to pass on the questions of capability and responsibility, as also as to whether the parties seriously intended doing business with a full recognition of the fact that the company would not accept less than $250,000 for the property.

Taking the parts of the letter in their natural sequence the last sentence or paragraph should follow the above. It reads: "If the parties you have in mind can fill the conditions above required, we should be pleased to have you put them in direct communication with us. Otherwise we shall not pursue the matter further." That is, if the parties are responsible and capable of carrying out *any engagement* entered into, and seriously and actively mean business, of all which the company is to judge, appellant is authorized to put them in direct communication with the company, and the company will attend to all negotiations, as to prices, terms, and conditions of sale. However, it is to be understood that negotiations are to begin on the basis of $250,000, and the purchasers must be thoroughly capable of carrying out "any engagement" undertaken, whether it be for $250,000, or more or less. The capability referred to was not one of $250,000, but one of a lesser or greater sum, as comprehended by the words "any engagement," and the price named was evidently interjected as a starting point for negotiations. Such it proved to be in this case. The appellant was employed merely to perform a preliminary act; his sole office was to bring the buyer and seller together; when he did that he did all that he was authorized to do. He had no authority to fix prices, terms, or conditions of sale. He was employed as a middleman to bring the parties together to enable them to make their own contract. This he did, and a sale resulted.

The further sentence in the letter, which, when orderly placed, would be the last, removes all doubt as to the intent of the company in the matter as to commissions that appellant should receive. That sentence is as follows: "In the event that anyone should buy the property from us as the direct result of an introduction to the company by yourself, we should of course be glad to recognize your intervention by a suitable commission on any deal that might be made." This promise of suitable commission is based upon *"any deal"* to *"anyone."* The compensation to appellant was not contin-

gent upon a sale of the property to "the parties you have in mind," but comprehended a sale to *anyone,* as the direct result of an introduction to the defendant company by the plaintiff. No upset price is named in this connection. This is significant, and bears out the suggestion that the price mentioned before was only tentative as to buyers, and that the company did not intend that appellant was to have no compensation for his services unless the property sold for $250,-000, or more. We conclude that it was the intention of the company, and was so understood by appellant, that the latter should be suitably compensated on *any deal* made by the company as the direct result of an introduction by appellant, whether the price realized was $250,000, or less.

The complaint states a cause of action, and the court erred in rejecting the evidence offered by appellant. The case is reversed and remanded for further proceedings not inconsistent with this opinion.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

NOTE.—For authorities on the question of the effect upon the right to commission of fact that owner sells to broker's customer at reduced price, see notes in 15 L. R. A., N. S., 272, and 34 L. R. A., N. S., 1050.