[Civil No. 1419.   Filed February 20, 1915.]

[146 Pac. 504.]

## ARIZONA-PARRAL MINING COMPANY, Appellant. v. A. W. FORBES, Appellee.

1. APPEAL AND ERROR—LAW OF THE CASE.—Where the facts presented in two appeals are the same, the decision on the first appeal is the law of the case and will not be reviewed on the second appeal.

2. APPEAL AND ERROR—LAW OF THE CASE.—A decision of the supreme court on appeal that a complaint, attacked by objections to evidence on the ground that it did not contain facts to constitute a cause of action, stated a cause of action, operates to estop defendant from attacking the sufficiency of complaint on other grounds, such as bringing the action prematurely.

3. JUDGMENT—NEW TRIAL—PLEADING—COMPLAINT—SUFFICIENCY—MANNER OF RAISING OBJECTIONS.—Objection that a complaint does not state a cause of action may be raised by demurrer, objections to evidence, motion for judgment on pleadings, motion in arrest of judgment, or motion for new trial.

4. APPEAL AND ERROR—LAW OF THE CASE.—A decision of the court on appeal, construing the contract relied on, is the law of the case on a subsequent trial.

5. BROKERS—EMPLOYMENT—CONTRACTS.—An owner declining to give a broker an option authorized him to put any responsible party in communication with the owners direct, with the understanding that he would not accept less than a specified sum for the property, and that if anyone should buy, as the direct result of the broker's efforts, the owner would pay a suitable commission. No time for performance of the contract was fixed. The broker accepted the terms. Sub-

sequently the parties entered into a contract authorizing the broker to sell the property to a third person or to such other person as might be approved by the owner for a specified sum before a designated date for a specified commission. A sale was not effected under the subsequent contract. *Held*, that the subsequent contract superseded the first contract, under the rule that a contract, complete in itself, supersedes a prior one in relation to the same subject matter, and the broker could not recover commissions under the first contract.

APPEAL from a judgment of the Superior Court of the County of Pima. A. C. Lockwood, Judge. Reversed and remanded.

The facts are stated in the opinion.

Messrs. Ashley & Gilbert and Mr. S. L. Kingan, for Appellant.

Mr. Eugene S. Ives and Mr. Gerald Jones, for Appellee.

ROSS, C. J.— The appellee, plaintiff below, instituted this action against the appellant, the defendant below, on November 7, 1912, for his services as a broker or middleman under a contract dated November 16, 1910. The contract, which is in the form of a letter from appellant to appellee, was set out in the complaint, and is in words and figures as follows:

"Arizona-Parral Mining Company,

"1012 Baltimore Avenue.

"Kansas City, Mo., November 16, 1910.

"Mr. A. W. Forbes, P. O. Box No. 868, Tucson, Arizona— Dear sir: I have your letter of November 11th, and in reply beg to say that this company cannot consider giving you a bond or option on the San Xavier property, and cannot entertain the putting of such negotiations through third parties.

"If responsible parties really desire to take up the matter seriously, they can be put by you in communication with us direct, so that we may satisfy ourselves that they are thoroughly capable of carrying out any engagement they might enter into in connection with same, and unless such parties can give us ample assurance that the matter will be taken up seriously and actively, with a full recognition of the fact that the company would not accept less than $250,000 for the property, we do not care to spend time in negotiation on the subject.

"In the event that anyone should buy the property from us as the direct result of an introduction to the company by yourself, we should of course be glad to recognize your intervention by a suitable commission on any deal that might be made.

"If the parties you have in mind can fill the conditions above required, we shall be pleased to have you put them in direct communication with us.    Otherwise we shall not pursue the matter further.

"Yours very truly,

"B. D. ROWE, President."

The complaint alleged that, in pursuance of the contract, the appellee did on or about April 9, 1912, present the San Xavier mining properties to the Empire Zinc Company, and, as a direct result of his efforts, on or about August 26, 1912, a contract was entered in to with the Empire Zinc Company, by the terms of which the Empire Zinc Company was given possession of the property with privilege of purchasing the same for $200,000, to be paid in installments of $50,000.    This contract was made a part of the complaint and was clearly an optional contract of sale.    It is further alleged that thereafter in November, 1912, said optional contract was changed and modified into a sale of the property by appellant to the Empire Zinc Company for $175,000.

This complaint was before us in *Forbes* v. *Arizona-Parral Min. Co.*, 15 Ariz. 30, 135 Pac. 715, on the question as to whether it stated facts sufficient to constitute a cause of action, and our holding on that appeal sustained the complaint.    The case was remanded for further proceedings, whereupon the defendant, whose answer had theretofore been a general denial, filed a plea in abatement of the action, alleging that the action was prematurely brought, in that when the action was instituted on November 7, 1912, the property had not been sold to anyone whomsoever, but remained and was the property of defendant; that property was not sold nor conveyed, nor the purchase price paid until after at least the 21st day of November, 1912, and long after the bringing of plaintiff's action.    Defendant also demurred to the complaint for the same reasons, the facts appearing upon the face of the complaint, alleging for said reason the complaint did not state facts sufficient to constitute a cause of action against the defendant.

The answer contained specific denials of all of the material allegations of the complaint, and set up another contract between plaintiff and defendant, in writing, dated April 1, 1912, in which the plaintiff was constituted the agent of defendant to sell said properties extending to July 31, 1912, for $250,000 to the Exploration Company, Limited, of London, or to such other person as should be approved in writing by the defendant, with the agreement that plaintiff should receive 12 per cent commission for effecting any such sale, on the total purchase price. It is alleged that, if plaintiff did anything toward the sale of said property, it was done under and by virtue of the last-mentioned contract, and that that was the sole and only contract in existence between the plaintiff and defendant at any time whatsoever in regard to the sale or disposition of said property, and the only contract subsisting between them from April 1, 1912, in regard to the sale of said properties.

The contract dated April 1, 1912, was not set out in the answer, but was pleaded according to its tenor and effect. It consisted of two instruments—one an optional contract of sale of the San Xavier properties to appellee, the latter, according to the recitals, acting for the Exploration Company, Limited, of London, and the other was a commission contract. In the trial these contracts were introduced in evidence. Their importance in the determination of the case is such that we here give the part of the optional contract that we deem vital and the whole of the commission contract.

Optional contract.

"Sixth. This agreement shall bind and inure to the benefit of the parties hereto, their successors, executors, administrators and assigns; provided, however, that this agreement shall only be assignable by the party of the second part to the Exploration Company, Limited, of London, or to such other person, firm or corporation as shall have been approved in writing endorsed hereon by the party of the first part."

Commission contract:

"This agreement made this 1st day of April, 1912, between Arizona-Parral Mining Company, a corporation under the laws of Arizona, party of the first part, and A. W. Forbes, party of the second part, witnesseth: Whereas, a certain option contract has been entered into between the parties hereto for the sale to party of the second part, or his assignees as in

that contract limited, of certain mining properties situated in the Pima mining district, state of Arizona, belonging to party of the first part, and dated evenly herewith; and whereas, said A. W. Forbes is acting in behalf of the Exploration Company, Limited, of London, in making such agreement, now if said agreement shall result in a sale of said properties by party of the first part, it agrees to pay said Forbes' commission as commission for effecting such sale as follows, to wit: Twelve (12) per cent of the total purchase price to be payable in installments after receipt by said party of the first part of each of the payments of twenty-five thousand ($25,000.00) dollars as in said contract provided, that is to say, three thousand ($3,000.00) dollars after receipt of each of said twenty-five thousand ($25,000.00) dollar payments, making a total, if said purchase price shall have been made, of thirty thousand ($30,000.00) dollars to said party of the second part, but no commission to be paid other than twelve (12) per cent on the amounts actually received in cash by party of the first part.''

The plea in abatement was denied, and the demurrer was overruled. A trial was had before a jury, and the plaintiff obtained a verdict for $8,750, upon which judgment was had.

Appellant assigns as errors: (1) The overruling its demurrer; (2) the denying its plea in abatement; (3) the court's refusal to grant its motion for instructed verdict on the conceded and established facts, as a matter of law, upon the ground that the contract of November 16, 1910, was merged in and superseded by the contract of April 1, 1912, said contract being of a later date, and on the same subject matter as the former one, and inconsistent therewith; (4) the refusal to grant defendant's motion for new trial; and (5) the refusing and giving instructions.

We think the court's ruling on the plea in abatement and demurrer should be sustained. When the case was in this court before, the question of the sufficiency of the complaint to state a cause of action was the only question raised or passed upon by us. Our decision was that the complaint did state a cause of action. We are now asked on this appeal to hold that the same pleading does not state a cause of action. It is contended by appellant that, in the former hearing, the sufficiency of the complaint was not formally questioned by demurrer, but only incidentally raised on objection to the introduction of evidence, and that therefore the points now

made are timely and should be sustained. In our opinion (15 Ariz. 31, 135 Pac. 715) we said:

"On the trial when appellant (present appellee) offered the letter set out in the complaint as evidence of his contract, the appellee (the present appellant) objected to it on the ground that the complaint failed to state facts sufficient to constitute a cause of action."

This was a correct and accurate statement of the assignment upon which the case was heard and decided. It is true that the only question briefed and argued before us was as to whether the contract set forth in the complaint required a sale of the property for $250,000 before commissions were earned. The question of prematurity of suit was not suggested and was not in the mind of the court when it held the complaint sufficient.

If the objection to the complaint had been by formal demurrer, and the court had overruled the demurrer, it seems to be conceded that the judgment of the court would have established the law of the case.

As was decided in *Consolidated Canal Co.* v. *Peters,* 5 Ariz. 80, 46 Pac. 74, the sufficiency of the complaint to state a cause of action may be raised "by demurrer, by objection to the evidence, by motion for judgment on the pleadings, by motion in arrest of judgment, or on motion for a new trial," and, if these are equally available and may be made to serve the same purpose, it would seem that a judgment of this court, sustaining the pleading as sufficient would be as binding in one case as in the other, for in each case the same question is raised, to wit, the sufficiency of the complaint to state a cause of action. This rule should be adopted to avoid "the delays of the law" against which there is much just complaint, as otherwise the rule contended for by appellant would open the door to appeals equal in number to the fundamental defects in the complaint. Litigants unwilling to meet the merits of the case would never interpose written demurrers, but, instead, would object to the introduction of evidence for insufficiency of complaint to state a cause of action, assigning one ground only, reserving other grounds, if any, for future uses if needed. The question as to whether the complaint stated a cause of action or not was one of law, squarely before the court, and we think it makes little difference how it was

presented if it be in a way provided by law. It seems to be well settled that, if the facts presented in two appeals are the same, the decision given on the first appeal becomes the law of the case in all subsequent stages, and will not be reviewed on the second appeal. 3 Cyc. 395; *Ohio Valley Trust Co.* v. *Wernke*, 179 Ind. 49, 99 N. E. 734. In this case the court said:

"It is first contended that the court below erred in overruling appellant's demurrer to the complaint. This ruling was made before the former appeal and was presented to the appellate court as error for which a reversal was asked. The question was decided adversely to appellant. The complaint has not been changed or amended since that ruling was made, and it settled the law of the case, so far as the sufficiency of the complaint is concerned, throughout all the subsequent stages of the cause. *Chambers* v. *Kyle* (1882), 87 Ind. 83; *Lillie* v. *Trentman* (1891), 130 Ind. 16, 29 N. E. 405; *James* v. *Lake Erie etc. R. Co.* (1897), 148 Ind. 615, 48 N. E. 222; *Hatfield* v. *Cummings* (1898), 152 Ind. 537, 53 N. E. 761; *Pittsburgh etc. R. Co.* v. *Collins* (1906), 168 Ind. 467, 80 N. E. 415; *Chicago etc. R. Co.* v. *Cobler* (1909), 172 Ind. 481, 87 N. E. 981; *Supreme Lodge etc.* v. *Andrews* (1906), 39 Ind. App. 1, 77 N. E. 361, 78 N. E. 433.

"But counsel for appellant contend that the appellate court on the former appeal did not pass upon the sufficiency of the complaint, nor in terms declare that it stated a cause of action; that the opinion of that court shows that it was only determined that the complaint was not subject to the one objection then made against its sufficiency; and they now press numerous additional alleged defects in the complaint which, it is claimed, make it fall short of stating a cause of action. Appellant's demurrer to the complaint was for want of facts sufficient to state a cause of action. It was overruled by the trial court. That ruling was presented to the appellate court for review as error, and the ruling of that court on the question was adverse to appellant. Thereby the sufficiency of the complaint as stating a cause of action was declared, and became the law of the case. If appellant saw fit to withhold in that appeal the objections now made to the complaint, it has waived them, and they are not available for further prolonging the

litigation. Any other conclusion would permit a party against whom a judgment had been taken on a complaint containing a number of alleged defects, each claimed to render it insufficient as a statement of a cause of action, to present the questions of the validity of the complaint, involved in one ruling on demurrer, in as many appeals as objections to it might be conjured by a fertile mind. Such a practice would be an outrageous offense against the guaranty of a speedy administration of justice and has been denied by this court. *Dodge v. Gaylord* (1876), 53 Ind. 365, 369; *McKinney* v. *State ex rel.* (1889), 117 Ind. 26, 27, 19 N. E. 613; *Stevens* v. *Templeton* (1909), 174 Ind. 129, 131, 91 N. E. 563.

"As was said in the case last cited, appeals cannot be allowed by piecemeal. There must be an end to them as speedily as the contention of litigants may be advanced and decided. So it is that all questions reserved for review by an appellate court must be presented on the first appeal thereafter from a final judgment, or not at all; for thereafter all questions presented by the record will be considered as finally determined and all such questions not expressly affirmed or reversed will, by implication, be deemed affirmed."

The objection that no cause of action had accrued at the institution of suit does not go to the jurisdiction of the court. It is an objection that may be waived (1 Cyc. 746), and, while we may not place our decision on the ground of waiver, we feel that appellant should be estopped by the first judgment from urging his present assignments.

It is next contended that the contract of April 1, 1912, superseded and merged the contract of November 16, 1910. Whether it does or not depends upon the facts and circumstances giving occasion to the two contracts. The last contract does not in terms refer to the first. But they are between the same parties, concerning the same subject matter. The services to be rendered under the November contract, as was said in our former opinion in this case (15 Ariz. 30, 135 Pac. 715), were:

"The appellant was employed merely to perform a preliminary act; his sole office was to bring the buyer and seller together; when he did that he did all that he was authorized to do. He had no authority to fix prices, terms or conditions

of sale.   He was employed as a middleman to bring the parties together to enable them to make their own contract.''

The construction then placed on that contract is, of course, binding as the law of the case, in its present consideration.

While the contract of 1912 was given by appellant and accepted by appellee primarily for the purpose of selling the properties to the London company, it was not limited to that company, for one of its terms was:

"Provided, however, that this agreement shall only be assignable by the party of the second part to the Exploration Company, Limited, of London, or such other person, firm or corporation as shall have been approved in writing endorsed hereon by the party of the first part.''

In the letter of November 16, 1910, the basis of the first contract, the appellant refused to ''consider the giving appellee a bond or option on the San Xavier property,''. but authorized appellee to put the appellant in direct communication with prospective purchasers having certain qualifications therein prescribed, retaining the right, before entering upon negotiations, of satisfying itself that such prospective purchaser met the conditions imposed.   In both contracts, therefore, are the same limitations.   That is, the owner retained the right to deal or not to deal.

The contract of 1912 imposed upon the appellee more extensive duties and powers and made his compensation definite and certain.   He was to sell the properties to the Exploration Company of London, ''or to such other person, firm or corporation'' as might be approved by the appellant, in writing, for the sum of $250,000 on or before July 31, 1912, for which services he was to be paid 12 per cent commission.   The contracts differed, in that, in the first no time limit was stated; whereas, in the second the sale must be compassed within a period of four months—from April 1 to July 31, 1912.   The compensation in the one was ''a suitable commission,'' and in the other 12 per cent of selling price of $250,000.   In one the sale price was not fixed, in the other it was fixed.   In the first the appellant was to be remunerated for his services ''on any deal that might be made,'' and in the last only on a sale to the London company or to such other person, firm or corporation as might be approved by appellant in writing.   In other words, one was a contract for a particular service—to intro-

duce a buyer to the owner—for which a suitable commission was to be paid, and the other was to find a buyer and to sell the property for $250,000 within four months, for a commission of 12 per cent. The sale was not effected under the last contract, but after it had elapsed, and for a less amount than in that contract stipulated, and, unless the first contract continued to subsist along with and after the second contract of agency was entered into, the appellee cannot recover. The first contract was the result of correspondence between the parties, and circumscribed the appellee's powers and duties to a minimum, and left his compensation indefinite. It was informal and of doubtful meaning, or at least the parties sought and secured its construction by this court in the former appeal. The second contract was the result of the active efforts of appellee. It was his proposition in the sense that it was he that presented the London company to the owner as a possible purchaser. He went from his home in Tucson to Kansas City to secure an option on the property to himself for the London company and to have reduced to writing an agreement definitely and certainly fixing his compensation in case a sale was effected by him. Both contracts concerned identically the same properties, and in each the appellee was constituted the agent of the owner with different powers, duties and compensation. In the last contract he was clothed with greater power and more duties, a successful execution of which entitled him to a larger reward. Had the appellee succeeded in selling the properties during the existence of the 1912 contract to the London company or any other person, as provided in his option of that date, it goes without saying that he would have sued for the agreed commission of 12 per cent. Such a sale to the Empire Zinc Company, the company that did purchase the properties, would have earned him his 12 per cent commission. Indeed, his claim could not have successfully been based on any other contract. For such services he could not have claimed "suitable compensation" under the contract of 1910. If he could, both contracts were alive at the same time, and he at liberty to claim commissions under either, the first if "any deal" were made as the result of an introduction by appellant, and in the second if a sale was made for $250,000 at his procurement; the compensation differing in each case. This would be true even though the sale had actually been

made to the London company for less than $250,000, for the contract of November, 1910, provides:

"In the event that anyone should buy the property from us as the direct result of an introduction to the company by yourself, we should of course be glad to recognize your intervention by a suitable commission on any deal that might be made."

The illustration, it seems to us, convincingly shows the impossibility of the two contracts standing together or subsisting at the same time, and also makes clear that the last contract abrogated the first.

The Empire Zinc Company was embraced in the terms of the 1912 contract as fully as in the 1910 contract. The 1912 contract was the formal act of both parties, was complete in itself covering the whole subject matter, and inconsistent with the terms of the first contract.

It remains for us to determine the force and effect in law of these facts.

"One written contract complete in itself will be conclusively presumed to supersede another one made prior thereto in relation to the same subject matter. If agreements be made between the same parties concerning the same matter, and the terms of the latter are inconsistent with those of the former so that they cannot subsist together, the latter will be construed to discharge the former." 9 Cyc. 595.

"A contract may also be discharged or modified by a new contract inconsistent with the earlier contracts, so that they cannot subsist together, even though there is no express agreement that the new contract shall have that effect. As a general rule, where the new contract is in regard to the same matter and has the same scope as the earlier contract, and the terms of the two contracts are inconsistent either in whole or in a substantial part, so that they cannot subsist together, the new contract abrogates the earlier one *in toto* and takes its place." 3 Elliott on Contracts, sec. 1865.

"That parties may rescind a contract, either expressly or by substituting another in its place which is so inconsistent with it that the two cannot well coexist and operate at one and the same time, cannot be doubted. Rights acquired under a contract may be abandoned or relinquished either by agreement, or by conduct clearly indicating such a purpose. *Falls* v. *Carpenter*, 1 Dev. & B. Eq. (21 N. C.) 237, 28 Am. Dec.

592; *Faw* v. *Whittington,* 72 N. C. 321; *Miller* v. *Pierce,* 104 N. C. 389, 10 S. E. 554; *Holden* v. *Purefoy,* 108 N. C. 163, 12 S. E. 848; *Taylor* v. *Taylor,* 112 N. C. 27, 16 S. E. 924; *Gorrell* v. *Alspaugh,* 120 N. C., at page 368, 27 S. E. 85; *May* v. *Getty;* 140 N. C. 310, 53 S. E. 75; *Lipschutz* v. *Weatherly,* 140 N. C. 365, 53 S. E. 132, at this term. A contract may be discharged by the substitution of a new contract, and this results: (1) Where a new contract is expressly substituted for the old one; (2) where a new contract is inconsistent with the old one; (3) where new terms are agreed upon, in which case a new contract is formed, consisting of the new terms and of the terms of the old contract which are consistent with them; and (4) where a new party is substituted for one of the original parties by agreement of all three. Clark on Contracts, p. 610, sec. 260.'' *Redding* v. *Vogt,* 140 N. C. 562, 567, 6 Ann. Cas. 312, 313, 53 S. E. 337, 338.

"A contract will be considered as having been rescinded by the substitution of another and subsequent contract relating to the same subject matter, where it appears to have been the intention of the parties, that the later contract should supersede the first one. Such inconsistency between the two contracts as renders the performance of both impossible, so that the two cannot stand together, operates in law to rescind the earlier contract. *Housekeeper Pub. Co.* v. *Swift,* 97 Fed. 290, 38 C. C. A. 187; *Paul* v. *Meservey,* 58 Me. 419; *Sherman* v. *Sweeny,* 29 Wash. 321, 69 Pac. 1117. Where the entire subject matter is covered, and there is nothing on the face of the second agreement to show that it is intended to be supplemental to the original agreement, it supersedes and rescinds the original, not as a question of intention, but by operation of law, as a result of steps taken by the parties. And the existence of these conditions is to be determined by the court. *Stow* v. *Russell,* 36 Ill. 18; *Mather* v. *Butler County,* 28 Iowa, 253; *Leffel* v. *Piatt,* 126 Mich. 443, 86 N. W. 65; *Cocheco Bank* v. *Berry,* 52 Me. 295; *Chrisman* v. *Hodges,* 75 Mo. 413; *McClurg* v. *Whitney,* 82 Mo. App. 625; *Howard* v. *Scott,* 98 Mo. App. 509, 72 S. W. 709.'' Note to *Redding* v. *Vogt, supra,* 6 Ann. Cas. 315.

To the same effect, see *Hall* v. *Wright,* 138 Ky. 71, 127 S. W. 516, Ann. Cas. 1912A, 255, and note, collating recent

cases; *McKay* v. *Fleming,* 24 Colo. App. 380, 134 Pac. 159; *Menefee* v. *Rankins,* 158 Ky. 78, 164 S. W. 365.

The question as to whether the last contract rescinded the first was submitted by the court to the jury. This, as will be seen by the citations above, was error. It was a question of law for the court. We have found but one case (*Holm* v. *Colman,* 89 Wis. 233, 61 N. W. 767) that seemingly sustains the court in submitting the question to the jury. We say "seemingly," for, in fact, in that case the evidence showed that the contract, if any, was based upon letters, one of which was lost. The court said:

"But one of the letters had been lost, and its contents were not very definitely proved, and much of the details of that contract had been left to implication or inference, and so it became a proper question . . . for the jury."

The evidence adduced on the trial shows that the appellee's efforts to sell the properties after he secured the contract of April, 1912, were all referable to that contract. Appellee testified that on the date of the execution of that contract he stated to the agent of appellant that he had several very strong people he could deal with, and mentioned the Empire Zinc Company as one. On the 13th of April he wrote the agent of the zinc company stating that he had an option upon the property on much more liberal terms than ever offered before, and saying he might come to him with it before he got through. On July 15th, he wired the agent of the zinc company:

"If you mean business, it may call for a trip to Kansas City, you and I together. The business all in my hands."

The agent of the zinc company then went to Tucson and spent two days examining the property. Appellee says: "He [the agent] saw my special commission, bond and lease which I had." He further testified:

"I went to my house and showed him this instrument, both instruments, and he took note of them, went into them carefully, . . . and we agreed that if it was necessary for these papers—any changes in them—that I would go to Kansas City either with him or whoever went, and help and perfect the papers that were necessary, if they had to be modified in any way to interest the Boston people (Empire Zinc Company) in the deal."

The appellee in his dealings with the Empire Zinc Company exhibited to it the last contract as his authority to sell the property. At no time did he mention the earlier agreement. In his complaint appellee alleges he first presented the properties to the Empire Zinc Company "on or about the 9th day of April, 1912," eight days after he had secured his last contract of agency. His every act thereafter was consistent with and related to a performance of the terms of the last contract. He was trying to sell to the Empire Zinc Company, and he had only one contract—the last one—that empowered him to sell the property. The first limited his power and duties to the introduction of a purchaser. He was required to do no more.

In *Simmons* v. *Sweeney*, 13 Cal. App. 283, 109 Pac. 265, Simmons procured a sale of some real property from one Henderson to Sweeney for the sum of $16,250. A written agreement was then entered into between them that the selling price of property should be $19,600; Sweeney to receive two-thirds of the profit, and Simmons one-third of the profit. Thereafter they entered into a verbal contract that the property should not be sold for less than $21,000, which should belong to Sweeney; any sum realized above that to belong to Simmons. Simmons, who was an auctioneer, following out the last agreement, undertook to sell the property, but was offered only $20,400. He thereupon instituted his action for damages "for the violation of said contract by defendant in preventing a sale of said property for $20,400, . . . and refusing to stand by the terms thereof and divide the profits, as provided in said contract." Upon these facts the court said:

"The only possible question that could arise would be whether this was intended to be substituted for the written agreement and whether the subsequent conduct of the appellant in attempting to sell the property is referable to said parol agreement. This was for the court to determine from all the facts and circumstances. While there was no express declaration that the parol contract was to supersede the written one, no other conclusion seems reasonable. The terms of these two contracts were entirely inconsistent and could not be operative at the same time. But the evidence for respondent shows conclusively that everything done by appellant toward effecting a sale of the property was in pursuance of the

said parol agreement. He followed its terms in advertising the property and announced to the bidders that their bids were rejected and the property withdrawn because it did not bring the said amount of $21,000. In fact, no one can read the evidence dispassionately without reaching the conclusion that the earlier agreement was entirely annulled by consent, and, since appellant failed to sell the property for the sum agreed upon, he was entitled to no compensation. If appellant intended to rely upon the first contract, he should have declined to accept and act upon the proposition subsequently submitted by respondent. He was called upon to exercise his election, and he chose to take his chances of getting a larger compensation under this second arrangement.''

We think the court committed error in not holding as a question of law that the contract of November 16, 1910, was superseded by the later contract of April 1, 1912, and in submitting the case to the jury upon the evidence.

The judgment of the court is reversed and the case remanded, with directions that the complaint be dismissed.

FRANKLIN and CUNNINGHAM, JJ., concur.

Rehearing denied, April 9, 1915.

NOTE.—As to the law of the case on second appeal, see note in 34 L. R. A. 321.